# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NO. ___

| | | |
|---|---|---|
| **JASON WEI LOCASALE** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| v. | ) | **(Jury Trial Demanded)** |
| | ) | |
| **DUKE UNIVERSITY** | ) | |
| **Defendant.** | ) | |
| | ) | |

Now comes PLAINTIFF complaining about DEFENDANT and alleges as follows:

### THE PARTIES:

1. Plaintiff, Dr. Jason Wei Locasale is a citizen and resident of Durham County, North Carolina.

2. Plaintiff is a Bi-Racial Asian male of medium dark complexion, with Asian features.

3. Plaintiff is an Associate Professor with Tenure in the Department of Pharmacology and Cancer Biology at the Duke University School of Medicine.

4. Plaintiff received a Bachelor's Degree at Rutgers University in Chemistry and Physics and a PhD at the Massachusetts Institute of Technology. Plaintiff completed a Postdoctoral Fellowship at Harvard Medical School.

5. Plaintiff is an internationally recognized scholar as one of the world's leading experts in the field of metabolism.

6. Plaintiff is an internationally recognized biomedical scientist in the field of cancer metabolism and his discoveries have brought hope to people afflicted by cancer.

7. Plaintiff has brought widespread recognition to Defendant in the form of scholarly publications, public outreach, speaking engagements and in multi-million dollars of research grants to Defendant Duke.

8. On November 22, 2019, Defendant highlighted Plaintiff on the Duke Medical School website as a faculty member recognized on the "Highly Cited Researchers" list.

9. Plaintiff has published over 150 articles in peer-reviewed journals and, according to Google Scholar, has an h-index of at least 51 and over 12,000 citations. These metrics output indicate that Plaintiff is a prolific scholar.

10. From on or around September 2018 to this date time, Plaintiff has authored five papers including two as senior author in the three prestigious scientific journals: *Cell*, *Nature* and *Science*. These and other publications from the Plaintiff have brought the Defendant recognition and improved its reputation as a Research University.

11. Plaintiff was recognized in November 2019 by Web of Science as being on the Global list of highly cited academics for multidisciplinary research. This honor was given to about 16 faculty out of over 2100 faculty in Defendant's School of Medicine.

12. Plaintiff is a highly accomplished mentor and teacher and he has received mentoring awards and his trainees have received awards from Defendant and outside institutions. This recognition includes a nomination for the Outstanding Postdoc Mentor at Duke University Award given by Defendant on or about September 24, 2018. These awards include a Celebrating Mentors Recognition from the Duke Annual Fund given to Plaintiff by Defendant on or about March 25, 2019. These awards recognize the positive performance in Plaintiff's teaching of undergraduate students, graduate students and postdoctoral research fellows.

13. Plaintiff has consistently received positive performance reviews from Defendant including on or around December 2018 and July 2019.

14. As an essential component to his professorship and employment, Plaintiff has operated a research laboratory at Defendant's School of Medicine, working with staff, undergraduate, and postgraduate students who are candidates for Master's, Medical Doctor, and Doctor of Philosophy degrees. The laboratory is a platform for teaching. The laboratory is also a conduit to perform scientific inquiry and discovery. The laboratory is a platform for scientific idea generation, scientific experimentation, data analysis, knowledge synthesis, and knowledge dissemination. The laboratory functions in collaboration with other laboratories at Defendant's workplace and at outside entities. In Plaintiff's profession, the laboratory is required for professional development.

15. Plaintiff has managed a funded laboratory bringing in millions of dollars to Defendant Duke.

16. In or about the calendar year 2015, Plaintiff was recruited to Defendant by Dr. Jeffrey Rathmell, former Associate Professor at Duke University.

17. On or around the start of Plaintiff's employment, Dr. Rathmell departed Defendant.

18. Dr. Locasale's recruitment was a partnership hire between the Duke Cancer Institute, the Duke Molecular Physiology Institute, and the Department of Pharmacology and Cancer Biology. Dr. Locasale was hired by Defendant to lead an initiative in Cancer Metabolism.

19. After Plaintiff was hired, Dr. Donald McDonnell ignored Dr. Locasale's job expectations. Among other matters, he was not admitted to committees that would be required for this Cancer Metabolism initiative.

20. Plaintiff was raised by a single mother of Chinese National Origin who had recently immigrated to the United States with limited money and education.

21. During his childhood Plaintiff learned Asian traditions and, as an Asian tradition, Plaintiff attended his mother's workplace settings and became accustomed to traditions associated with the ethnic minority groups that inhabited those settings.

22. As a result of his upbringing, Plaintiff was raised to question discriminatory practices.

23. Plaintiff has been subjected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendant.

24. Plaintiff has objected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendant.

25. Plaintiff has objected to discrimination of others on the basis of color and race/national origin ("ethnic discrimination"), and failure to make handicapped accommodations by Defendant.

26. Defendant Duke University ("Duke") is a non-profit corporation existing under the laws of North Carolina, operating Duke University School of Medicine in Durham, NC and doing business in Durham County, North Carolina. It employs more than 500 employees.

27. The following persons acted as the employees and agents and within the course of scope of their employment and/or agency with regard to the matters set forth in the Complaint:

- Dr. Donald McDonnell (white male), Chairman of the Department of Pharmacology and Cancer Biology

- Dr. Mary Klotman (white female), Dean of the School of Medicine

- Dr. Colin Duckett (white male), Vice Dean for Basic Science of the School of Medicine

- Mr. Scott Gibson (white male), Executive Vice Dean for Administration of the School of Medicine

- Dr. Ann Brown (white female), Vice Dean for Faculty of the School of Medicine

- Dr. Carol Epling (white female), Director of Employee Occupational Health and Wellness

- Ms. Sharon Dowell-Newton (white female), Business Manager of Department of Pharmacology and Cancer Biology

## JURISDICTION AND VENUE

28. The venue of this Court over this controversy is based upon the following:

   a.   The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b);

   b.   The unlawful contract and fraud actions were committed in the Middle District of North Carolina, and

   c.   Plaintiff avers that Defendant is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

29. Jurisdiction of the court is invoked pursuant to 28 U.S.C § 1343(3) and (4), 28 U.S.C. § 1331 and 42 U.S.C. § 2000e, et. seq., this being a proceeding to enforce rights and remedies secured to Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., as amended; by the Civil Rights Act of 1991, 42 U.S.C. §1981. Jurisdiction is further invoked pursuant to 42 U.S.C. § § 2201-2202, this being an action for declaratory relief, declaring illegal the acts of Defendants complained of herein for violation of rights secured to Plaintiff by

the several Civil Rights Acts, State statutes and laws.

30. All conditions precedent to jurisdiction under 42 U.S.C.§ 2000e, et. seq., have occurred or been complied with, to wit:

    a) A charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the discriminatory employment practice;

    b) A Notification of Right to Sue from the Equal Employment Opportunity Commission was dated October 28, 2019, and mailed on or about October 29, 2019 (A copy of which is Attached hereto as Exhibit A).

31. Jurisdiction is also proper through N.C.G.S. § 143-422.1 and N.C.G.S. § 1-253.

32. Venue is proper in this court pursuant to N.C.G.S. § 1-77.2

    The venue of this Court over this controversy is based upon the following:

    a. The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b); and,

    b. Plaintiff avers that Defendant Duke is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

33. Plaintiff timely filed five separate Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge Nos. 433-2020-00200, 433-2020-00798, 433-2020-01044, 433-2020-00484, and 433-2020-01108.

34. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of Discrimination dated October 28, 2019 and mailed on or about October 29, 2019.

35. Plaintiff has exhausted all of his administrative remedies under Title VII of the 1964 Civil Rights Act.

## STATEMENT OF FACTS

36. Defendant has practiced discrimination, as evidenced by the following illustrative, but not entire evidence to be presented at a trial of this matter.

### Duke's Discrimination and Retaliation Against Plaintiff

37. Discrimination and retaliation against Plaintiff by Defendant has included an ongoing pattern and practice of adverse actions and retaliation as expanded upon below. They include, but are not limited to:

   a. Denying him access and ability to conduct research and teach

   b. Denying him the ability to utilize research project funding

   c. Bullying him to write a withdrawal letter for his pending federal grant application and Defendant later unilaterally withdrawing the grant

   d. Threatening to place him on unpaid leave status

   e. Subjecting him and/or his students and/or his staff to unwarranted, undefined investigations, audits, and threats of future audits and/or investigations to intimidate him

   f. Subjecting him to an unjustified fitness for duty examination and intentionally delaying the examination.

   g. Accusing him of impairment under a substance abuse policy with no justification

   h. Alleging undefined "lack of professionalism" and disruptive behavior to intimidate him

   i. Belittling him to students and/or staff and/or faculty

   j. Disrupting his research projects

   k. Denying him the ability to obtain funding for future research

   l. Denying him the ability to attend professional conferences and seminars

   m. Denying accommodations for his ethnic minority graduate student studying with him who declared a disability

   n. Denying at least one of his ethnic minority students appropriate, customary scholarship funding to study with him

   o. Threatening and/or attempting to disband his research group

p.  Attempting to commandeer his intellectual property

q.  Not permitting him to write letters of recommendation for his trainees

r.  Limiting his ability to continue the education of his trainees

s.  Subjecting him to verbal abuse and physical intimidation

t.  Subjecting his students and/or staff to intimidating conduct

u.  Suspending him and barring him from entering campus

v.  Delaying his ability to advance to full professor

w.  Denying him earned financial research incentives

x.  Denying him appropriate staffing

y.  Denying him principles of academic freedom and tenure including due process as embodied in the spirit of the University Faculty Handbook.

z.  Discrimination and retaliation by notifying at least one research funder that he is on administrative leave

### Duke's Discriminatory Culture

38. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 37 above as if fully set forth herein.

39. Defendant's School of Medicine has a history of favoring white persons over Asian men in hiring and retention.

40. Defendant's School of Medicine has a pattern and practice of treating white employees better than non-white employees who have equal or better training, experience and performance.

41. Defendant's School of Medicine has a pattern and practice of treating Asian employees more poorly than white employees and treating them negatively because of factors associated with their Asian identity and culture.

42. The history of Dr. McDonnell in treating Plaintiff negatively, because of his Asian culture, is illustrated by his insistence on having small talk and requiring direct eye contact during conversations, after he has been told that this is not within Asian culture.

43. Plaintiff, as part of his partnership hire and recruitment to Duke University, was not aware that he would be subjected to unilateral reporting to Dr. McDonnell and his promoted climate and thus encouraged to engage in activities of a non-diverse

culture.

44. On or about June 2018, Plaintiff objected to these discriminatory practices including reporting concerns to a number of institutional channels.

45. On or about August 7, 2019, Plaintiff formally objected to these discriminatory practices by reporting concerns to the Office of Institutional Equity (OIE), an internal Duke University grievance channel. OIE informed Plaintiff that Plaintiff should report the matter to Human Resources. Ironically, Human Resources in Plaintiff's department reports to Dr. McDonnell.

46. On or about September 2018, shortly after his arrival at Duke University, Dr. Duckett, the Vice Dean for Basic Science and Dr. McDonnell's supervisor had encountered Dr. Locasale on campus. After Plaintiff introduced himself, Dr. Duckett admitted that in his role in the Dean's Office he would work to not override the actions of the Department Chairs.

47. Defendant has a history of treating Asian employees and students negatively because of their Asian identity as evidenced by Chinese Students being chastised by a Director of Graduate Studies in the School of Medicine because they spoke Chinese on the Duke campus.

48. On information and belief, Defendant gives favorable treatment to non-Asian employees in the Pharmacology and Cancer Biology, Basic Sciences Department as evidenced by Defendant's promotion and/or support of the following employees:

Sarah Goetz (white, female)

Donald Fox (white, male)

James Alvarez (white, male)

David MacAlpine (white, male)

Christopher Counter (white, male)

Ann Marie Pendergast (white, female)

Scott Floyd (white, male)

Deborah Muoio (white, female)

Dwight Koeberl (white, male)

Donald McDonnell (white, male)

Colin Duckett (white, male)

Daniel Lew (white, male)

Christopher Newgard (white, male)

Michael Kastan (white, male)

**Plaintiff is Subjected to Unwarranted Investigations and Audits**

49. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 48 above as if fully set forth herein.

50. Plaintiff has been subjected to repeated and unwarranted audits and investigations and heightened scrutiny by Defendant's leadership.

51. On or about July 25, 2019, Plaintiff was informed by Dr. McDonnell that Dr. Mary Klotman, Dean of the School of Medicine, ordered that he would be subject to a "cultural" audit.

52. On or about July 25, 2019, Plaintiff was subject to a hiring freeze of his lab and non-provision of scholarship funds for a student to study with Plaintiff.

53. The unprecedented "cultural" audit of Plaintiff's laboratory was undefined so that Defendant could harass, intimidate and bully Plaintiff. An auditor, not expert in laboratory protocol, scientific research and professional responsibilities of a Professor, was brought in to interview Plaintiff's students, staff and administrators about alleged lack of professionalism and compliance with Defendant's culture.

54. The "cultural" audit was undefined so that Defendant could utilize this vehicle to interview Plaintiff's staff, students, and colleagues and question his performance and conduct, all in their effort to undermine Plaintiff's leadership role and interfere with his ability to teach, perform research, and give constructive feedback to his students and staff.

55. The "cultural" audit was undefined so that Defendants could utilize this scheme to send a message to Plaintiff's staff, students, and colleagues that he was under scrutiny and undermine his role as leader of the laboratory and damage his reputation.

56. On or about August 28, 2019, despite Plaintiff already having been subjected to routine and regular monitoring by several regulatory oversight entities, Plaintiff was also subject to a billing and compliance audit by Defendants that was ordered by Dr. Duckett.

57. The targeted and undefined audit was conducted while Plaintiff was undergoing the cultural audit. Defendants refused to delay the audit until the "cultural" audit was completed.

58. The "cultural" audit showed no improper actions by Plaintiff or any misconduct in his research laboratory.

59. The billing and compliance audit showed no improper actions by Plaintiff or any misconduct in his research laboratory.

60. Additionally, on or about September 6, 2019, Plaintiff's staff member was accused by the Department of Pharmacology and Cancer Biology Business Manager, Ms. Sharon Dowell-Newton of administering false documents for billing.

61. Plaintiff and his staff member were able to refute the allegation on sight and have Defendant Duke retract its accusation of falsified documents, because there was no impropriety.

**Interference With Plaintiff's Research Program**

62. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 61 above as if fully set forth herein.

63. On or about April 23, 2019, Defendant would not affirm to provide customary scholarship  funds to support a newly entering ethnic minority student into Plaintiff's laboratory.

64. On or about July 25, 2019, Defendant implemented a hiring freeze on Plaintiff's research lab staff preventing him from taking on new students, and making new hiring offers to postdoctoral fellows, research associates, technicians and other employees necessary for his laboratory to operate with proficiency.

65. On or about July 25, 2019, Plaintiff was subject to denial of scholarship funds for a student to study with Plaintiff.

66. The hiring freeze resulted in Plaintiff having insufficient resources to maximize the performance of his lab and the research projects being conducted therein, despite his

successful ongoing procurement of external research funding.

67. On or about September 6, 2019, in a letter sent to Plaintiff by Mr. Scott Gibson, Executive Vice Dean For Administration in the Defendant's School of Medicine, with Dr. McDonnell and Dr. Duckett copied, Plaintiff was threatened with undefined consequences if he did not volunteer a withdrawal letter for a research project grant application to the National Institutes of Health in the Department of Health and Human Services ("NIH").

68. On or about September 11, 2019, the Defendants unilaterally withdrew the NIH grant application for a project submitted by Plaintiff.

69. This grant application was required for Plaintiff to sustain continuous NIH funding. Continuous NIH funding is needed for the sustainment of his research program and advancement of his career trajectory. Continuous funding would also lead to his eligibility and success of obtainment of a larger, longer term award (R35 Outstanding Investigator Award) from the NIH. This trajectory would sustain and grow his research program further developing his career in biomedical science for the next 8 to 10 years. Accordingly, Plaintiff's professional and earning capabilities have been damaged.

**<u>Plaintiff is Subjected to Unwarranted Denial of Access to His Lab, Students, Classrooms and to the Duke Campus and His Freedom of Speech is Circumscribed</u>**

70. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 69 above as if fully set forth herein.

71. On or about October 18, 2019 Defendant, through a written letter served by Dr. McDonnell, Dr. Duckett, and Dr. Ann Brown, Vice Dean for Faculty of the School of Medicine, among other matters, Plaintiff was unjustifiably told to remove himself from the campus, not have access to his lab, office, students, staff, classrooms and the Duke campus without first being seen by Defendant identified doctors and being subjected to a fitness for duty evaluation. Defendant prohibited Plaintiff from having meetings and conversations with his students and staff and other Duke staff. Defendant Duke prohibited Plaintiff from attending professional meetings. Defendant prohibited Plaintiff from communicating with students, postdocs, and

staff until he was returned from his leave. Defendant prohibited Plaintiff from traveling to conferences and other universities to discuss his scholarly work. Defendant prohibited Plaintiff from using research funds to conduct research. Defendant prohibited Plaintiff from contacting staff at Duke. Defendant prohibited Plaintiff from discussing research with other Duke faculty and to others who do not work at Duke.

72. Dr. McDonnell sent an email to Plaintiff on or around October 24, 2019 stating that "you are not allowed represent yourself as a Duke faculty member in any capacity (ie interactions with collaborators, staff, trainees, or attendance at scientific meetings)."

73. These orders resulted in an interference with Plaintiff's freedom of speech as embodied by the spirit of the Faculty Handbook and academic tenure.

74. Because of these orders, among other consequences, Plaintiff was subjected to harm including but not limited to damage to his professional and personal reputation, a loss of prospective job opportunities, a loss of opportunities to develop his research, a loss of career advancement, a loss of prospective research funding, a loss of scholarly output and a loss of monetary gains from professional engagements.

75. On information and belief, Defendant has been presenting false negative information and disparaging statements to persons including Plaintiff's students and/or staff about Plaintiff and his absence from the Duke campus.

76. On information and belief, Defendant has been making student and/or personnel placements that may not permit return to their prior positions and research/education with Plaintiff.

77. On information and belief, Defendant has denied Plaintiff access to a research scholar's talent by denying Plaintiff's request that a scholar be granted a visa for entry into the United States to conduct research with Plaintiff.

**Plaintiff is Subjected to Unwarranted Harassment, Bullying, Retaliation and Intimidation**

78. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 77 above as if fully set forth herein.

79. At an October 18, 2019 meeting requested by Plaintiff to extend an olive branch, Dr. McDonnell chastised Plaintiff for, among other things, not making eye contact even

though he was aware that it was Plaintiff's Asian culture not to make eye contact.

80. A letter dated October 10, 2019 drafted by Defendant Duke and received on December 3, 2020, stated a requirement for an evaluation by only by two named evaluators: one was a non-medical doctor and the second was not identified by specialty.

81. On or about October 18, 2019 Defendant, through a written letter, gave Plaintiff an order that he be subjected to a fitness for duty evaluation with a Defendant-identified and Defendant-affiliated doctor.

82. The October 18, 2019 letter outlining Plaintiff's administrative leave did not state a requirement of an evaluation by a specialist.

83. Following his request, on October 24, 2019 Plaintiff was given the ability to choose a provider for the required fitness for duty examination.

84. An intimidation and retaliatory tactic, on or about November 4, 2019 at 4:59 p.m. Dr. McDonnell sent Plaintiff an email stating that he had until November 8, 2019 to identify an evaluator.

85. On or about November 7, 2019 Plaintiff met the above deadline and scheduled an appointment for November 13, 2019 with his physician (a doctor who had experience conducting fitness for duty examinations) to conduct the examination.

86. On or about November 7, 2019, Defendant through Dr. Carol Epling, Director of Defendant's Employee Occupational Health and Wellness unit was contacted by Plaintiff's identified qualified medical doctor to conduct the fitness for duty evaluation required by Defendant in order for him to return to his professional responsibilities.

87. On or about November 13, 2019, and only following questioning by Plaintiff about their response delay to the provided doctor, Defendant rejected the doctor submitted by Plaintiff to conduct the fitness for duty evaluation.

88. On or about November 15, 2019 at 5:20 p.m. Dr. McDonnell sent Plaintiff another bullying email telling him that he had until November 20, 2019 at noon to identify another fitness for duty evaluator.

89. Plaintiff met the November 20th deadline for identifying a new evaluator and the name was provided to both Dr. Epling and the Defendant's s attorney.

90. After silence for nearly two weeks, Defendant Duke sent a letter on December 3,

2019 potentially agreeing to allow Plaintiff to submit to an evaluation from Plaintiff's physician.

91. On or about December 3, 2019, Plaintiff scheduled an examination for December 11, 2019 with his physician.

92. On December 6, 2019, Plaintiff's physician contacted Dr. Epling for instructions and collaterals and provided Dr. Epling with her requested documentation identified in the letter dated December 3, 2019.

93. On or about December 11, 2019, Plaintiff was ready to take the examination, but learned that the scheduled examination had to be rescheduled because Defendant had not provided its material to Plaintiff's physician.

94. On December 11, 2019, Plaintiff contacted Dr. Epling and learned she had not made her contact with the physician.

95. On or about December 13, 2019 Dr. McDonnell sent Plaintiff another bullying email telling him that he had until December 31, 2019 to undergo the fitness for duty evaluation or else he would be placed on unpaid leave. This was done even though Plaintiff's prior appointment had been cancelled because of Defendant's failure to act and the new deadline set by Dr. McDonnell was during the holiday season when the evaluator had pre-scheduled travel plans.

96. On or about January 18, 2020 Defendants harassed and intimidated Plaintiff by notifying at least one of his research funding sources that he was on leave from Duke University.

### Duke Breached its Contract and Engaged in Fraudulent and Negligent Conduct With Regard to Plaintiff

97. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 96 above as if fully set forth herein.

98. Defendant's School of Medicine induced Plaintiff to enter into an employment agreement based upon recruitment representations made to Plaintiff. Among those representations, Plaintiff was told that he would have academic freedom, would have access to students, would be able to conduct research as a Duke University faculty member, would lead a cancer metabolism initiative and would have a leadership role at the Duke Cancer Institute.

99. These representations were reinforced in the employment offer letter that stated

as a full-time University employee, Plaintiff was hired as a tenure-track faculty member and would be subjected to all applicable University policies. The offer letter specifically identified the Faculty Handbook as stating University policies that applied upon his hiring. Plaintiff accepted the offer and relied upon the offer letter's representations.

100. Appendix C of the above-referred to Faculty Handbook ("Appendix C") has provisions regarding Academic Freedom and Academic Tenure. Among other items, it states that: "This document embodies an agreement between the president and the faulty as to policies and procedures with respect to academic freedom, academic tenure, and certain matters of due process." With regard to academic freedom it states that the faculty has the freedom to "act and speak in his or her capacity as a citizen without institutional censure or discipline."

101. The ability to act or speak as a citizen was a material fact in the recruitment efforts of Defendant.

102. The ability to act or speak as a citizen was a material fact in Plaintiff's decision to accept employment with Defendant.

103. The letter to Plaintiff from Defendant dated October 18, 2019 put Plaintiff on an involuntary leave for an indefinite period of time and states that Plaintiff is to have no contact (i.e. no communications) with Duke students, post-docs or staff or professional meetings while on the indefinite leave.

104. The letter to Plaintiff from Defendant dated October 18, 2019 curtailed Plaintiff from speaking to Duke students, post-docs, staff or have professional meetings with them or others, thereby violating the provision in Appendix C that a faculty member has the right to act and speak in his capacity as a citizen.

105. The letter to Plaintiff dated October 18, 2019 is an institutional censure and threatened institutional discipline for a violation of the prohibitions stated therein, in violation of Appendix C referred to above.

106. The letter to Plaintiff dated October 18, 2019 was reinforced by an email dated October 24, 2019 stating that Plaintiff was prohibited from interaction directly with his staff and trainees set in response to Plaintiff inquiry as to how he was to respond to students and staff communications.

107. The letter to Plaintiff dated October 18, 2019 and the October 24, 2019 re-enforcing

statements via an email, were a material breach of the inducements to Plaintiff to accept the employment contract with Defendant.

108. The letter to Plaintiff dated October 18, 2019 and the October 24, 2019 re-enforcing statements via an email, were a material breach of the employment contract with Defendant.

109. Plaintiff was deceived by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen.

110. Plaintiff was intentionally deceived by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen.

111. Plaintiff was damaged by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen because as a result of that deception he lost earnings and professional growth opportunities that would have been available had he not relied upon the deceitful representations.

112. Defendant, as Plaintiff's employer, acquired Plaintiff's trust by providing him with Defendant's Faculty Handbook and identifying it as an agreement that Plaintiff could rely upon. Defendant took advantage of the trust and confidence that Plaintiff relied upon by transferring Plaintiff's lab members and research projects to other Defendant's faculty members so that Defendant would benefit financially and in reputation from the scientific knowledge and funding earned by Plaintiff.

113. Defendant was unjustly enriched by its suspension of Plaintiff from employment and its denial of Plaintiff's ability to act and speak in his capacity as a citizen in that Defendant as Plaintiff's employer, kept the lab members and research projects built upon Plaintiff's experience, knowledge and funding grants and sponsorships and is using his knowledge and abilities for its own benefit without the consent of Plaintiff.

114. Defendant took the above described actions, knowing Plaintiff was relying upon a belief that Defendant, as his employer, would act in good faith and would deal fairly with Plaintiff. Defendant violated its requirement in the employer/employee relationship to deal in good faith with Plaintiff and protect his ability to conduct research, develop grant funding and interact with students, staff and colleagues. Plaintiff has suffered harm in his professional reputation, professional development and ability for future earnings as a result of the

failure of Defendant to act in good faith and fair dealings.

115. Defendant gave Plaintiff reason to rely upon the provision in Appendix C that as a faculty member he has the right to act and speak in his capacity as a citizen because they made it part of his employment offer letter. Plaintiff accepted that offer, giving up other employment opportunities. Defendant negligently misrepresented to Plaintiff that he could rely upon the fact that if he accepted employment at Defendant as a faculty member, he would have the right to act and speak in his capacity as a citizen. This right was denied to Plaintiff who has been damaged in his professional career and earnings potential.

116. Plaintiff seeks monetary damages and a declaratory judgment to correct the wrongs of Defendant's conduct.

**DAMAGES FROM DISCRIMINATION, RETALIATION, BREACH OF CONTRACT, FRAUD, NEGLIGENT MISREPRESENTATION BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS AND UNJUST ENRICHMENT**

117. Defendant has discriminated against Plaintiff on the basis of his race, color and/or national origin.

118. Defendant has retaliated against Plaintiff because of his opposition to race, color and/or national origin discrimination.

119. Defendant has breached its contract with Plaintiff.

120. Defendant has engaged in fraud, Negligent Misrepresentation Breach of Covenant of Good Faith and Fair Dealings and Unjust Enrichment with regard to Plaintiff.

121. As a result of Defendant's unlawful and bad faith actions, Plaintiff has suffered lost wages, lost benefits, lost leadership opportunities, emotional distress and other compensatory damages.

## Causes of Action

### FIRST CLAIM OF RELEIF

### RACIAL, COLOR AND/OR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT

122.    Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

123.    The actions of Defendant as set forth herein constitute intentional discrimination against Plaintiff on the basis of his sex, race, color and/or national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A(a)(1).

124.    Defendant engaged in discriminatory practices against Plaintiff with either malice or reckless indifference to the federally protected rights of Plaintiff to be free from racial, color and/or national origin discrimination in the workplace, as set forth in 42 U.S.C. § 1981A(b)(1).

125.    As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered the loss of wages, other financial compensation and benefits of employment.

126.    Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

127.    As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

128.    Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (Title VII) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

129.    Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a)(1) and (b)(1) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

130.    Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF:

## RETALIATION IN VIOLATION OF THE
## CIVIL RIGHTS ACT OF 1964

131. Plaintiff hereby incorporates by reference the above factual allegations in support of this claim for relief.

132. As set forth above, Plaintiff objected to discrimination against his on the basis of his race, color and national origin.

133. Plaintiff filed five separate Charges of Discrimination against Defendant on the basis of these protected characteristics and protected activities.

134. The actions of Defendant as set forth herein constitute retaliation against Plaintiff for the assertion of his right to be free from racial, color and/or national origin discrimination. Such retaliation is in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).

135. As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered the loss of wages, other compensation, benefits of employment and professional development.

136. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

137. As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

138. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (Title VII) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

139. Defendant engaged in retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from racial, color and national origin discrimination in the workplace, as set forth in 42 U.S.C. § 1981A(b)(1).

140. Plaintiff is entitled to punitive damages as provided by 42 U.S.C. § 1981 in an amount exceeding $25,000 as a proximate result of Defendant's conduct as alleged herein.

141.    Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## THIRD CLAIM FOR RELIEF:
## VIOLATION OF THE RECONSTRUCTION ERA STATUTES

142.    Plaintiff hereby realleges and incorporates by reference the factual allegations above as though set forth fully herein.

143.    The actions of Defendant as set forth herein constitute intentional discrimination and retaliation on the basis of Plaintiff's race and color in violation of the Reconstruction Era Statutes, 42 U.S.C. § 1981.

144.    As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered the loss of wages, other forms of compensation and benefits of employment.

145.    Plaintiff is entitled to recover his economic losses in an amount greater than $25,000.

146.    As a result of the unlawful actions of Defendant as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

147.    Plaintiff is entitled to compensatory damages as provided by the Reconstruction Era Statutes, 42 U.S.C. § 1981, in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

148.    Defendant engaged in race and color discrimination and retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from race discrimination in the workplace.

149.    Plaintiff is entitled to punitive damages in an amount exceeding $25,000 as a proximate result of Defendant's conduct as alleged herein.

150.    Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting her rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

151. Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

152. Defendant was and is a party to a written contract for employment and tenure. Under the terms of this contract, Defendant was and is obligated to adhere to the policies and procedures with respect to academic freedom, academic tenure, and certain matters of due process.

153. Pursuant to the terms of the contract, under Academic Freedom and Academic Tenure, Plaintiff was able "To act and to speak in his or her capacity as a citizen without institutional censorship or discipline."

154. Plaintiff has complied with all material terms of the contract.

155. As described above, Defendant Duke has intentionally failed and neglected to perform under the contract by placing Plaintiff on unjustified leave and refusing to allow Plaintiff to have contact with Duke students, post-docs or staff, and attend professional meetings

156. Defendant's conduct, as alleged herein, constitutes breach of contract accompanied by fraudulent and other willful and wanton tortious acts.

157. By reason of the foregoing, Plaintiff has been injured by Defendant's tortious and fraudulent acts.

158. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

## FIFTH CLAIM FOR RELIEF
### FRAUD

159. Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

160. Defendant made false representation or concealment of a material fact that was intended to and did in fact reasonably induce reliance and resulted in injury or

damage to Plaintiff. Defendant knowingly made material representations of material fact as noted herein. At the time of making the representations, the Defendant knew or should have known that the representations were false and that Plaintiff would not have entered into the agreement and accepted the employment offer letter had Plaintiff known that the representations were false.

161.     As a result of his reliance on the truth of the material terms of the agreement, Plaintiff has been damaged as set forth herein, and said damages directly result from the acts and omissions of Defendant and its agents and representatives of the Defendant.

162.     Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## SIXTH CLAIM FOR RELIEF
### FRAUD IN THE INDUCEMENT

163.     Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

164.      Defendant fraudulently induced the plaintiff to enter into a contract for employment by citing policies and procedures for academic freedom and academic tenure. At the time of making the representations, the Defendant knew or should have known that the representations were false and that Plaintiff would not have entered into the agreement had Plaintiff known that the representations were false.

165.     At the time of the solicitation of the Plaintiff, Plaintiff was an eager, trusting and anxious Scientist ready to impress and work in the employment of Defendant. Plaintiff's willingness to participate was enhanced by the altruistic goals of participation touted by Defendant. Plaintiff had no knowledge that he would be not be able to act or speak without being censored or disciplined. The misrepresentations of the Defendant were intentional, material, and were egregious violations of Plaintiff's willingness to do well.

166.     Defendant's conduct constituted an abuse of the vulnerability of Plaintiff who at all times acted in a reasonable and prudent manner, and who was ignorant of the falsity of the representations. Plaintiff relied on (and had the right to rely on) the

truth of the representations. But for the representations, Plaintiff would not have agreed to accept the employment.

167.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## SEVENTH CLAIM FOR RELIEF
### CONSTRUCTIVE FRAUD

168.    Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

169.    As Plaintiff's employer, Defendant owed him the utmost duty of care, including the duty to fully disclose every material fact within its knowledge of which Plaintiff was not privy.

170.    Defendant's violation of its representations that Plaintiff would be able to act or speak without being censored or disciplined and Plaintiff's reasonable reliance thereon were substantial factors in causing Plaintiff harm.

171.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## EIGHTH CLAIM FOR RELIEF
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

172.    Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

173.    By virtue of the contractual relationship between the Defendant and Plaintiff, an implied duty of good faith and fair dealing, which Defendant has breached by engaging in the numerous acts and practices set forth in this Complaint.

174.    Defendant has further breached its implied duty of good faith and fair dealing by refusing to provide adequate and/or legitimate explanations for adverse actions and practices set forth in this Complaint.

175.    By reason of the foregoing, Defendant has breached the covenant of good

faith and fair dealing owed to Plaintiff.

176.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## NINTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION

177.    Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

178.    Defendant breached his duty as described in the Complaint.

179.    Defendant had a duty to use reasonable care to ensure that its representations to Plaintiff in its employment offer letter and documents incorporated therein were true accurate and complete, and were fairly and adequately communicated to Plaintiff. Defendant negligently failed to do so.

180.    As a direct and proximate result of the negligence described above, Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## TENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

181.    Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

182.     Upon employing Plaintiff, Defendant knew Plaintiff was a highly regarded member of the scientific community and as such was able to secure grants and funding pursuant to his name and professional reputation.

183.    Plaintiff secured grants and funding for Defendant Duke as a result of his name, talent and professional reputation.

184.    Defendant Duke suspended Plaintiff, but continued to benefit from his grants and funding by transferring his student and project to other faculty members and as such Defendant Duke became unjustly enriched.

185.    Plaintiff is entitled to recover for economic losses and punitive damages in

an amount greater than $25,000.

## ELEVENTH CLAIM FOR RELIEF
### EQUAL EMPLOYMENT PRACTICES N.C.G.S.§ 143-422.1

186.  Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

187.  The Equal Employment Practices Act, N.C.G.S.§ 143-422, provides that "[i]t is the public policy of this State to protect and safeguard the right of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex, or handicap by employers ...." Defendant  has violated this Act as described in this Complaint.

## TWELFTH  CLAIM FOR RELIEF
### DECLARATORY JUDGMENT

188.  Plaintiff hereby incorporates by reference the allegations of the above factual allegations in support of this claim for relief.

189.  Declaratory judgment is necessary to cure the wrongs identified above.

190.  By reason of the foregoing, Plaintiff is entitled to declaratory relief.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff prays the Court that it:

1.  Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of Plaintiff's rights;

2.   Permanently enjoin the Defendant from engaging in said unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law;

3.  Award Plaintiff compensatory damages for pecuniary losses, emotional pain, and mental anguish, embarrassment and humiliation for each of the above stated causes of actions in an amount more than $25,000.00, together with attorney's fees

pursuant to 42 U.S.C. § 1988 and North Carolina law, plus the costs and disbursements of this action;

4.      Award Plaintiff punitive damages and affirmative relief necessary to eradicate the effects of each claim regarding the intentional unlawful retaliation, unlawful practices, unlawful conduct, unlawful employment opportunity denials and unlawful discrimination.

5.      Award Plaintiff all appropriate statutory damages.

6.      Grant Plaintiff a jury trial on all issues of fact; and

7.      Grant such other relief as may be just and proper.


This is the 27th day of January, 2020.

_____/s/Janet J. Lennon_____

Janet J. Lennon, Attorney for Plaintiff
N.C. Bar No.: 30458
123 West Main St., Suite 310
Durham, NC 27701
Phone (919) 680-8548
Fax    (919) 680-8549
Email:jlennon@jlennonlaw.com

# EXHIBIT A

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jason W. Locasale<br>217 Mainline Station Drive<br>Morrisville, NC 27560 | From: | Raleigh Area Office<br>434 Fayetteville Street, Suite 700<br>Raleigh, NC 27601 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 433-2020-00200 | Kofi K. Sam,<br>Investigator | | (919) 856-4094 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

- [X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

| Enclosures(s) | for /Thomas M. Colclough,<br>Acting District Director | 10.28.2019<br>(Date Mailed) |
|---|---|---|

cc:
Neera Skurky
Associate University Counsel
DUKE OFFICE OF GENERAL COUNSEL
P.O. Box 104124
Durham, NC 27710

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**



EMPLOYMENT OPPORTUNITY COMMISSION
Office
le Street, Suite 700
7601-1701

Unit

RALEIGH
NC 275
29 OCT '19
PM 4 L

US POSTA

Jason W. Locasale
217 Mainline Station Drive
Morrisville, NC 27560

27560-611217