**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No: 1:20-CV-00087-CCE-JEP**

**JASON WEI LOCASALE,**

     **Plaintiff,**

**v.**

**DUKE UNIVERSITY and
DONALD PATRICK MCDONNELL, in
his individual and official capacity**

     **Defendants.**

**AMENDED COMPLAINT**

Now comes Plaintiff complaining about Defendants and alleges as follows:

**THE PARTIES:**

1. Plaintiff, Dr. Jason Wei Locasale, is a citizen and resident of Durham County, North Carolina.

2. Plaintiff is a Bi-Racial Asian male of medium dark complexion, with Asian features.

3. Plaintiff is employed as an Associate Professor with Tenure in the Department of Pharmacology and Cancer Biology at the Duke University School of Medicine.

4. Plaintiff received a Bachelor's Degree at Rutgers University in Chemistry and Physics and a PhD at the Massachusetts Institute of Technology. Plaintiff completed a Postdoctoral Fellowship at Harvard Medical School.

5. Plaintiff is an internationally recognized scholar as one of the world's leading experts in the field of metabolism.

6. Plaintiff is an internationally recognized biomedical scientist in the field of cancer metabolism and his discoveries have brought hope to people afflicted by cancer.

7. Duke University ("Defendant Duke") is a non-profit corporation existing under the laws of North Carolina, operating Duke University School of Medicine in Durham, NC and doing business in Durham County, North Carolina. At all times relevant to this Complaint, Duke did business in the State of North Carolina and was the employer of Plaintiff within the meaning of the common law of the State of North Carolina and in accord with the definition of "employer" under the EEOC and ADA. It employs more than 500 employees.

8. The following person, among other Duke employees, acted in his individual capacity and official capacity, within the course and scope of his employment, as a representative and/or agent with regard to the matters set forth in the Complaint and is named as a party to this action:

   -Defendant Dr. Donald P. McDonnell ("Defendant McDonnell"), as Chairman of the Defendant Dukes' Department of Pharmacology and Cancer Biology and Plaintiff's supervisor at all relevant times.

9. Plaintiff has brought widespread recognition to Defendant Duke resulting from scholarly publications, public outreach, speaking engagements and in multi-million dollars of research grant awards to Defendants.

10. On or about November 22, 2019, Defendant Duke highlighted Plaintiff on the Duke Medical School website as a faculty member recognized on the "Highly Cited Researchers" list.

11. From on or around September 2018 to this date time, Plaintiff has authored five papers including two as senior author in the three prestigious scientific journals: *Cell*, *Nature* and *Science* which provide an objective metric that he is one of the highest performing research scholars in Defendant's School of Medicine. These and other publications from the Plaintiff have brought the Defendant Duke recognition and improved its reputation as a Research University.

12. Plaintiff was recognized in November 2019 by Web of Science as being on the Global list of highly cited academics for multidisciplinary research. This honor was given to approximately 16 faculty members out of over 2100 faculty in Defendant's School of Medicine.

13. Plaintiff is a highly accomplished mentor and teacher and he has received mentoring awards and his trainees have received awards from Defendant Duke and outside institutions. This recognition includes a nomination for the Outstanding Postdoc Mentor at Duke University Award given by Defendant Duke on or about September 24, 2018. This recognition also includes a nomination for a Gordan G. Hammes Faculty Teaching Award by students to the Defendant Duke's School of Medicine in the calendar year of 2017. The awards include a Celebrating Mentors Recognition from the Duke Annual Fund and Defendant Duke's President Vincent Price given to Plaintiff by Defendant Duke on or about March 25, 2019. These awards recognize the positive performance in Plaintiff's teaching of undergraduate students, graduate students and postdoctoral research fellows.

14. Plaintiff has consistently received positive performance reviews from Defendants. These include his most recent reviews given to him on or around December 2018 and July 2019.

15. As an essential component to his professorship and employment, Plaintiff has operated a research laboratory at Defendant's School of Medicine ("SoM"), working with staff, undergraduate, and postgraduate students who are candidates for Master's, Medical Doctor, and Doctor of Philosophy degrees. The laboratory is a platform and classroom for teaching. The laboratory is also a conduit to perform scientific inquiry and discovery. The laboratory is a platform for scientific idea generation, scientific experimentation, data analysis and knowledge synthesis (scientific fact-finding), and knowledge dissemination. The laboratory functions in collaboration with other laboratories at Defendant's workplace and with outside entities. In Plaintiff's profession, the laboratory is required for professional development.

16. Plaintiff has managed a funded laboratory bringing in millions of dollars to Defendants.

## STATEMENT OF FACTS

17. Plaintiff was raised by a single mother of Chinese National Origin who had recently immigrated to the United States with limited money and education.

18. During his childhood Plaintiff learned Asian traditions and, as an Asian tradition, Plaintiff attended his mother's workplace settings and became accustomed to traditions associated with the ethnic minority groups that inhabited those settings.

19. As a result of his upbringing, Plaintiff was raised to question discriminatory practices.

20. Plaintiff has been subjected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendants.

21. Plaintiff has objected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendants.

22. Plaintiff has objected to discrimination of others on the basis of color and race/national origin ("ethnic discrimination") and failure to make handicapped accommodations ("disability discrimination") by Defendants.

23. In or about the calendar year 2015, Plaintiff was recruited to Defendant Duke by Dr. Jeffrey Rathmell, former Associate Professor at Duke University and others.

24. Plaintiff, during his recruitment and at the time of his eventual agreement to work at Defendant Duke in 2015, had been prior to, employed at Cornell University. At or around the time of his employment agreement with Defendant Duke, he also had an offer from the University of Texas - MD Anderson.

25. As a part of the recruitment process, Plaintiff was given a proposed offer letter that incorporated, by an included link, the policies stated in the Duke Faculty Handbook and the policies of the School of Medicine.

26. The Duke Faculty Handbook ("DFH"), the terms of which were expressly incorporated into Plaintiff's contract with Duke, entitled him to certain rights as to his employment relationship with Duke. These rights included those stated in Appendix C of the DFH, which in relevant part defines itself as "embodies an agreement between the president and the faculty as to policies and procedures with respect to academic freedom, academic tenure, and certain matters of due process." The relevant promises made by Duke and applicable to Plaintiff include, *inter alia*: The promise that Duke faculty have academic freedom "[t]o act and to speak in his or her capacity as a citizen without institutional censorship or discipline" , to be able to conduct research "[t]o carry on research and publish the results subject to the adequate performance of his or her other academic duties." and to "[t]o teach and to discuss in his or her classes any aspect of a topic pertinent to the understanding of the subject matter of the course being taught."

27. Defendant Duke included the Handbook as part of its recruitment process in order for Plaintiff to be able to rely upon its provisions.

28. Defendant Duke included the policies of the SoM as part of its recruitment process in order for Plaintiff to be able to rely upon those policies.

29. Defendant Duke promulgated the Duke Faculty Handbook with knowledge that Duke faculty would take Duke at its word and would rely upon Duke's representations that those benefits would be provided to Duke faculty as stated therein.

30. At the time Defendant Duke promulgated the Duke Faculty Handbook, it was reasonably foreseeable to Duke that Duke faculty would take Duke at its word and would rely upon Duke's representations that those benefits would be provided to Duke faculty as stated therein.

31. Defendant Duke promulgated the Duke Faculty Handbook with the intention that Duke would be bound by the promises it made to its faculty therein, including the intention to be bound by its commitment to provide academic freedom to Duke faculty and to due process.

32. On or around the start of Plaintiff's employment, Dr. Rathmell departed Defendant Duke.

33. Plaintiff's recruitment was a partnership hire between the Duke Cancer Institute ('DCI"), the Duke Molecular Physiology Institute ("DMPI'), and the Department of Pharmacology and

Cancer Biology. Plaintiff was hired by Defendant Duke to lead an initiative in Cancer Metabolism.

34. Upon information and belief, the appropriate report by Plaintiff would have been to the Dean of the SoM (Dean Nancy Andrews) as the supervisor to multiple Duke units. Rather, Plaintiff was subjected to unilateral reporting to a lesser ranked Chairman, Defendant McDonnell.

35. Plaintiff, as part of his partnership hire and recruitment to Duke University, was not aware that he would be subjected to unilateral reporting to Defendant McDonnell and his promoted climate encouraging and/or requiring engagement of activities of a non-diverse culture.

36. On or about September 2018, Dr. Duckett, the Vice Dean for Basic Science and Defendant McDonnell's supervisor had encountered Plaintiff on campus, shortly after Dr. Duckett's arrival at Duke University. After Plaintiff introduced himself, Dr. Duckett admitted that in his role in the Dean's Office he would work to not override the actions of the Department Chairs.

37. After his arrival at Defendant Duke, Plaintiff was censured and/or disciplined for speaking on several occasions. This included voicing concern over Defendant Duke not accommodating a handicapped minority student as early as August 2018 and as late as June 2019.

38. On or about April 23, 2019, Defendants would not affirm to provide customary scholarship funds to support a newly entering ethnic minority student into Plaintiff's laboratory.

39. On or about the month of August 2018, Plaintiff objected to discriminatory practices by Defendant Duke including reporting concerns to a number of institutional channels including Vice Dean Raphael Valdivia and President Vincent Price.

40. The history of Defendant McDonnell in treating Plaintiff negatively, because of his Asian culture, is illustrated by his insistence on having small talk and requiring direct eye contact during conversations, after he has been told that this is not within Asian culture.

41. On or about July 19, 2019, Plaintiff was informed by Defendant McDonnell that Dr. Mary Klotman, Dean of the School of Medicine, ordered that he would be subject to a "cultural" audit.

42. The unprecedented "cultural" audit of Plaintiff's laboratory was undefined so that Defendants could harass, intimidate and bully Plaintiff. An auditor, not expert in laboratory protocol, scientific research and professional responsibilities of a Professor, was brought in to interview Plaintiff's students, staff and administrators about alleged but undefined lack of professionalism and compliance with Defendants' culture.

43. On or about July 12, 2019, Plaintiff was subject to denial of scholarship funds for a student to study with Plaintiff.

44. On or about July 19, 2019, Plaintiff was subject to a hiring freeze on his lab and non- provision of customary scholarship funds for a minority student who desired to study and conduct research with Plaintiff.

45. Plaintiff was prevented from taking on new students, and making new hiring offers to postdoctoral fellows, research associates, technicians and other employees necessary for his laboratory to operate with proficiency.

46. On or about August 7, 2019, Plaintiff formally objected to these discriminatory practices by reporting concerns to the Office of Institutional Equity (OIE), an internal Duke University grievance channel. OIE informed Plaintiff that Plaintiff should report the matter to Human Resources. Ironically, Human Resources in Plaintiff's assigned department reports to Defendant McDonnell.

47. On or about August 28, 2019, despite Plaintiff already having been subjected to routine and regular monitoring by several regulatory oversight entities, Plaintiff was also subject to a billing and compliance audit by Defendants that was ordered by Dr. Colin Duckett.

48. The targeted and undefined audit was conducted while Plaintiff was undergoing the "cultural" audit. Defendants refused to delay the audit until the "cultural" audit was completed.

49. The "cultural" audit showed no improper actions by Plaintiff or any misconduct by him or within his research laboratory.

50. The billing and compliance audit showed no improper actions by Plaintiff or any misconduct in his research laboratory.

51. Additionally, on or about September 6, 2019, Plaintiff's staff member was accused by the Department of Pharmacology and Cancer Biology Business Manager, Ms. Sharon Dowell-Newton of administering false documents for billing.

52. Plaintiff and his staff member were able to refute the allegation on sight and have Defendants retract its accusation of falsified documents, because there was no impropriety.

53. On or about September 6, 2019, in an email sent to Plaintiff by Mr. Scott Gibson, Executive Vice Dean For Administration in the Defendant's School of Medicine, with Defendant McDonnell and Dr. Duckett copied, Plaintiff was threatened with undefined consequences if he did not volunteer a withdrawal letter for a research project grant application to the National Institutes of Health in

the Department of Health and Human Services ("NIH").

54. This research grant application at issue was required in order for Plaintiff to receive continuous NIH funding. Continuous NIH funding is needed for the sustainment of his research program and advancement of his career trajectory. Continuous funding would also lead to his eligibility and success of obtainment of a larger, longer term award (R35 Outstanding Investigator Award) from the NIH. This trajectory would sustain and grow his research program, further developing his career in biomedical science for the next 8 to 10 years.

55. On or about September 11, 2019, Defendants unilaterally withdrew the NIH grant application for the project submitted by Plaintiff.

56. On October 8, 2019 Plaintiff requested a meeting with Defendant McDonnell to extend an olive branch. At that meeting, Defendant McDonnell chastised Plaintiff for, among other things related to body language, not making eye contact even though he was aware that it was Plaintiff's Asian culture not to make eye contact.

57. On or about Friday October 18, 2019 at around 3:00 p.m., Defendants gave Plaintiff a written letter, ordering Plaintiff to be subjected to an undefined fitness for duty evaluation with Defendants' selected, identified and affiliated medical doctor. Plaintiff was unjustifiably told to remove himself from the campus, not have access to his lab, office, students, staff, classrooms and the Duke campus without first being seen by Defendants' identified doctors and being subjected to a fitness for duty evaluation. Defendants prohibited Plaintiff from having meetings and conversations with his students and staff and other Duke staff. Defendants prohibited Plaintiff from attending professional meetings. Defendants prohibited Plaintiff from communicating with students, postdocs, and staff until he was returned from his undefined leave. Defendants prohibited Plaintiff from traveling to conferences and other universities to discuss his scholarly work. Defendants prohibited Plaintiff from using research funds to conduct research. Defendants prohibited Plaintiff from contacting staff at Duke. Defendants prohibited Plaintiff from discussing research with other Duke faculty and to others who do not work at Duke.

58. Defendant McDonnell sent an email to Plaintiff on or about October 24, 2019 stating that "you are not allowed represent yourself as a Duke faculty member in any capacity (ie interactions with collaborators, staff, trainees, or attendance at scientific meetings)."

59. Unbeknownst to Plaintiff at that time, a letter dated October 10, 2019 had been drafted and signed by Defendant McDonnell, stating a requirement for an evaluation by two Duke affiliated

named evaluators: one was a non-medical doctor and the second was not identified by specialty.

60. After Plaintiff insisted, on October 24, 2019 he was given the ability to make a choice of the provider for the required fitness for duty examination.

61. On or about October 29, 2019 and during subsequent meetings, Defendant McDonnell made disparaging statements about Plaintiff in the presence of at least ten students and staff who study and work with Plaintiff.

62. As an intimidation and retaliatory tactic, on or about November 4, 2019 at 4:59 p.m. Defendant McDonnell sent Plaintiff an email stating that he had until November 8, 2019 to identify an evaluator.

63. Plaintiff met the above November 8th deadline and scheduled an appointment for November 13, 2019 with a physician (a doctor who had experience conducting fitness for duty examinations) to conduct the examination.

64. On or about November 7, 2019, Defendants through Dr. Carol Epling, Director of Defendant's Employee Occupational Health and Wellness unit, was contacted by Plaintiff's identified, qualified medical doctor to obtain the protocol to conduct the fitness for duty evaluation required by Defendants in order for Plaintiff to return to his professional responsibilities.

65. On or about November 13, 2019, and only following questioning by Plaintiff about their response delay to the provided doctor, Defendant Duke rejected the doctor submitted by Plaintiff to conduct the fitness for duty evaluation.

66. On or about November 15, 2019 at 5:20 p.m., Defendant McDonnell sent Plaintiff another bullying email telling him that he had until November 20, 2019 at noon to identify another fitness for duty evaluator.

67. Plaintiff met the November 20th deadline for identifying a new evaluator and the name was provided to both Dr. Epling and the Defendants' attorney.

68. After silence for nearly two weeks, Defendants sent a letter on December 3, 2019 potentially agreeing to allow Plaintiff to submit to an evaluation from the evaluator.

69. On or about December 3, 2019, Plaintiff scheduled an examination for December 11, 2019 with the physician.

70. On information and belief, On December 6, 2019, the independent physician contacted Dr. Epling for instructions and collaterals and provided Dr. Epling with the documentation requested by her in a letter dated December 3, 2019.

71. On or about December 11, 2019, Plaintiff was ready to take the examination, but learned that the scheduled examination had to be rescheduled because Defendants had not provided their documentation to the physician.

72. Indeed, on December 11, 2019, Plaintiff contacted Dr. Epling and learned she had not made her contact with the physician.

73. On or about December 13, 2019, Defendant McDonnell sent Plaintiff another bullying email telling him that he had until December 31, 2019 to undergo the fitness for duty evaluation or else he would be placed on unpaid leave. This was done even though Plaintiff's prior appointment had been cancelled because of Defendant Duke's failure to act and the new deadline set by Defendant McDonnell was during the holiday season when the evaluator had pre-scheduled travel plans.

74. On or about January 3, 2020, Plaintiff took the Fitness for Duty examination.

75. Upon information and belief, on or about January 23, 2020 provider sent the results of the examination to Defendant Duke.

76. On or about January 18, 2020 Defendants harassed and intimidated Plaintiff by notifying at least one of his research funding sources that he was on leave from Duke University.

77. On or about January 21, 2020, Plaintiff's postdoctoral fellow was falsely accused by Defendant McDonnell of mismanaging research data.

78. On or about February 4, 2020, Defendants informed Plaintiff he was declared fit for duty.

79. On February 6, 2020, only after Plaintiff inquired, Plaintiff was given a meeting date of March 16, 2020 to discuss a return to work.

80. Upon Plaintiff's request to move up the meeting, the meeting was re-scheduled to February 18, 2020.

81. At that meeting, on February 18, 2020, Defendant Duke, among other actions, rejected Plaintiff's request for cultural training for Duke administrators and required that he submit to supervision by Defendant McDonnell.

82. On or about February 24, 2020, Plaintiff was handed a contract pre-signed by Defendant McDonnell containing false negative statements about Plaintiff, and Plaintiff was urged to sign it on the spot.

83. Plaintiff was told that if he did not sign the agreement by March 5, 2020, among other things, he would be placed on unpaid leave status and his grant projects would be terminated. This was

directed to him even though he would not have had the meeting until March 16th and would have continued on paid leave status until that date if he had not made a request to move the meeting up.

84. On February 24, 2020, Plaintiff requested that Defendant Duke provide him with an electronic copy of the letter in order for him to make suggested edits.

85. On February 28, 2020, Plaintiff was given an electronic copy.

86. On March 4, 2020, Plaintiff offered his edited agreement and offered to negotiate the agreement.

87. On March 5, 2020, Dr. Colin Duckett stated that the agreement was not negotiable.

88. On March 6, 2020, Plaintiff was placed on unpaid leave status.

89. Upon information and belief, on or about March 12, 2020, Defendant McDonnell met with at least six of Plaintiff's students and staff and made negative statements about Plaintiff.

90. On March 13, 2020, President of Duke, Dr. Vincent Price issued a statement that all Duke faculty and staff will continue to stay in a paid work status during the Coronavirus matter.

91. On March 13, 2020, Plaintiff filed an appeal in of his termination, in accordance with Defendant Duke's grievance process, with the Chair of the Duke University Faculty Hearing Committee in accordance with the provisions of the Duke Faculty Handbook, including Appendix C and Appendix N.

92. On March 14, 2020 was not notified that Defendant McDonnell was entitled to 30 days to respond to Plaintiff's appeal, but that the Committee sua sponte extended the time to respond to respond to sixty (60) days, making the deadline May 13, 2020 and obligating the respondent, Defendant McDonnell, to copy Plaintiff with his response.

93. After a call from Plaintiff's attorney to Duke's attorney, Kate Hendricks, on March 18, 2020, Plaintiff was informed that his salary would resume until March 31, 2020 or until Duke eases restrictions regarding the Coronavirus. Plaintiff was still subjected to all other restrictions.

94. Plaintiff has never received total compensation for the unpaid leave time that started on March 6, 2020.

95. On March 31, 2020, Plaintiff was informed in writing that his research grants would be terminated and he would be subjected to termination if he did not sign the agreement by April 7, 2020.

96. On or about April 7, 2020, Plaintiff signed an agreement to avoid elimination of his research program, likely termination of his staff (including several on Duke-sponsored visas),

displacement of his students, and termination.

97. On or about May 1, 2020, Plaintiff was informed that at least one research grant had been terminated.

98. The factual pattern above is continuing in nature and Plaintiff has information that he may be subjected to continuing discrimination and/or retaliation as a result of his complaints and this lawsuit.

99. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant Duke within the meaning of the common law and within the definition of the Equal Opportunity Employment Commission (EEOC), 42 U.S.C. § 2000 et. seq. and the ADA, 42 U.S.C. § 12112, et seq.

100. Included in the benefits set out in the Duke Faculty Handbook, Defendant Duke promised its faculty that it would provide and protect certain rights with respect to faculty employment with Defendant Duke.

101. After Plaintiff was hired, Defendant McDonnell ignored Plaintiff's job expectations. Among other matters, he was not admitted to committees that would be required for the Cancer Metabolism initiative.

102. Following Plaintiff's initial contract with Defendant Duke, and at the time of his promotion to a tenured Associate Professor, Defendant Duke continued the same promulgation of its Duke Faculty Handbook in order to represent the various benefits and obligations existing between Defendant Duke and its faculty in their employment relationship.

103. The history of Defendant McDonnell in treating Plaintiff negatively, because of his Asian culture, is illustrated by his insistence on having small talk and requiring direct eye contact during conversations, after he has been told that this is not within Asian culture.

104. Prior to October 18, 2019, Plaintiff had received interest in lateral or upward employment opportunity from other potential employers in or about calendar years 2018 and 2019.

105. Upon information and belief, as punishment through a diminution of his career development, Defendants sent career sabotaging notifications of Plaintiff's placement on leave status to the American Cancer Society (ACS), to the National Institutes of Health (NIH) and other research institutions.

106. Defendant Duke discriminated against Plaintiff by suspending his employment on October 18, 2019 stating the basis as Plaintiff's perceived disability.

107. At the time of Plaintiff's suspension as a tenured Associate Professor at Duke, he was performing his job at a level that met or exceeded his employer's legitimate expectations.

108. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an employee resulting from discrimination, protected activities and because of a falsely perceived disability.

109. Duke had no legitimate non-discriminatory reason for its adverse employment action against Plaintiff.

110. Upon information and belief, the acts as alleged herein were committed against Plaintiff with malice or reckless indifference to Plaintiff's protected rights.

111. The following persons acted as the employees, representatives and/or agents of Defendant Duke and within the course of scope of their employment with regard to the matters set forth in the Complaint:

- Defendant McDonnell (white male), Chairman of the Department of Pharmacology and Cancer Biology

- Dr. Mary Klotman (white female), Dean of the School of Medicine

- Dr. Colin Duckett (white male), Vice Dean for Basic Science of the School of Medicine

- Mr. Scott Gibson (white male), Executive Vice Dean for Administration of the School of Medicine

- Dr. Ann Brown (white female), Vice Dean for Faculty of the School of Medicine

- Dr. Carol Epling (white female), Director of Employee Occupational Health and Wellness

- Ms. Sharon Dowell-Newton (white female), Business Manager of the Department of Pharmacology and Cancer Biology

- Dr. Christopher Newgard (white male), Professor Department of Pharmacology and Cancer Biology, Director Duke Molecular Physiology Institute

- Dr. Raphael Valdivia (white male), Former Vice Dean for Basic Science of the School of Medicine

- Moria Montalbano (white female), Associate Dean, Space Management & Research Resources

- Dr. Jeffrey Rathmell (white male), Associate Professor Department of Pharmacology

and Cancer Biology

- Kate Hendricks (white female), Deputy Counsel Duke University

112. Plaintiff voiced concern to Dr. Ann Brown, Dr. Colin Duckett, and Defendant McDonnell on October 18, 2019 that perceptions about a disability were due to racial animus.

113. Defendants regarded Plaintiff as having a mental handicap. Defendants required a medical assessment as a necessary condition of employment at Duke. Due to this perceived disability, Defendants discriminated against him in violation of the Americans with Disabilities Act (ADA).

114. Plaintiff filed a timely charge with the EEOC alleging violations of the ADA and the Americans with Disabilities Act Amendments Act (ADAAA) by Duke. On or about February 21, 2020, the EEOC issued its Notice of Right To Sue (NRTS) entitling Plaintiff to bring suit on his claims under the ADA and ADAAA. All conditions precedent to this lawsuit have been fulfilled.

115. At all times relevant herein, Plaintiff was perceived by Defendants to be disabled, within the ADAAA in that: (1) Plaintiff was perceived to have a physical or mental impairment that substantially limited one or more major life activities; (2) Plaintiff was regarded as having such an impairment.

## JURISDICTION AND VENUE

116. The venue of this Court over this controversy is based upon the following:

   a. The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b);

   b. The unlawful contract and fraud actions were committed in the Middle District of North Carolina, and

   c. Plaintiff avers that Defendant is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

117. Jurisdiction of the court is invoked pursuant to 28 U.S.C § 1343(3) and (4), 28 U.S.C. § 1331 and 42 U.S.C. § 2000e, et. seq., this being a proceeding to enforce rights and remedies secured to Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., as amended; by the Civil Rights Act of 1991, 42 U.S.C. §1981. Jurisdiction is further invoked pursuant to 42 U.S.C. § § 2201- 2202, this being an action for declaratory relief and injunctive relief, declaring

illegal the acts of Defendant complained of herein for violation of rights secured to Plaintiff by the several Civil Rights Acts, State statutes and laws and preventing further and future violations of these statutes and laws.

118. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e, et. seq., have occurred or been complied with, to wit:

    a. A charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the discriminatory employment practice;

    b. A Notification of Right to Sue from the Equal Employment Opportunity Commission was dated October 28, 2019, and mailed on or about October 29, 2019 (A copy of which is Attached hereto as Exhibit A).

119. This being a proceeding also to enforce rights and remedies secured to Plaintiff by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., the ADA Amendments Act of 2008 ("ADAAA"). It seeks declaratory and injunctive relief to ensure the rights secured by Plaintiff pursuant to the ADA and to prevent further and future violations of this statute.

120. All conditions precedent to jurisdiction under 42 U.S.C. § 12101, et. seq., have occurred or been complied with, to wit:

    a. A charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the discriminatory employment practice;

    b. A notification of Right to Sue from the Equal Employment Opportunity Commission was dated February 21, 2020. (A copy of which is Attached hereto as Exhibit B).

121. Jurisdiction is also proper through N.C.G.S. § 143-422.1 and N.C.G.S. § 1-253.

122. Venue is proper in this court pursuant to N.C.G.S. § 1-77.2 The venue of this Court over this controversy is based upon the following:

    a. The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b); and,

    b. Plaintiff avers that Defendant Duke is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

123. Plaintiff timely filed seven separate Charges of Discrimination with the EEOC, designated as EEOC Charge Nos. 433-2020-00200, 433-2020-00798, 433-2020-01044, 433-2020-00484, 433-2020-01108, 433-2020-01324 and 433-2020-02113.

124. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of Discrimination dated October 28, 2019 and mailed on or about October 29, 2019.

125. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of violation of the ADA and ADAAA dated February 21, 2020.

126. Plaintiff has exhausted all of his administrative remedies under Title VII of the 1964 Civil Rights Act.

127. Defendants have practiced discrimination and retaliation, as evidenced by the following illustrative, but not entire evidence to be presented at a trial of this matter.

## Duke's Discrimination and Retaliation Against Plaintiff

128. Discrimination and retaliation against Plaintiff by Defendants have included an ongoing pattern and practice of adverse actions and retaliation as expanded upon below. They include, but are not limited to:

   a. Denying him access and ability to conduct research and teach

   b. Denying him the ability to utilize research project funding

   c. Bullying him to write a withdrawal letter for his pending federal grant application and Defendants later unilaterally withdrawing the grant

   d. Threatening to place him on unpaid leave status

   e. Subjecting him and/or his students and/or his staff to unwarranted, undefined investigations, audits, and threats of future audits and/or investigations to intimidate him

   f. Subjecting him to an unjustified fitness for duty examination and intentionally delaying the examination.

   g. Accusing him of impairment under a substance abuse policy with no justification

   h. Alleging undefined "lack of professionalism" and disruptive behavior to intimidate him

i. Belittling him to students and/or staff and/or faculty

j. Disrupting his research projects

k. Denying him the ability to obtain funding for future research

l. Denying him the ability to attend professional conferences and seminars

m. Denying accommodations for his ethnic minority graduate student studying with him who declared a disability

n. Denying at least one of his ethnic minority students appropriate, customary scholarship funding to study with him

o. Threatening and/or attempting to disband his research group

p. Attempting to commandeer his intellectual property

q. Not permitting him to write letters of recommendation for his trainees

r. Limiting his ability to continue the education of his trainees

s. Subjecting him to verbal abuse and physical intimidation

t. Subjecting his students and/or staff to intimidating conduct

u. Suspending him and barring him from entering campus and using his credentials

v. Delaying his ability to advance to full professor

w. Denying him earned financial research incentives

x. Denying him appropriate staffing

y. Denying him principles of academic freedom and tenure including due process as embodied in the spirit of the University Faculty Handbook.

z. Discrimination and retaliation by notifying at least one research funder that he is on administrative leave

aa. Denying him appropriate laboratory and office space

bb. Placing him on unpaid leave status

cc. Continuing and ongoing retaliation to be identified through the discovery process

## Duke's Discriminatory Culture

129. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 128 above as if fully set forth herein.

130. Defendants, particularly its School of Medicine and Medical Center, have a history of favoring white persons over Asian men in hiring and retention.

131. Defendant's School of Medicine has a pattern and practice of treating white employees better than non-white employees who have equal or better training, experience and/or performance.

132. Defendants have a pattern and practice of treating Asian male employees and students more poorly than white employees and students and treating them negatively because of factors associated with their Asian identity and culture.

133. Defendant Duke has a history of treating Asian male employees and students negatively because of their Asian identity as evidenced by Chinese Students being chastised by a Director of Graduate Studies in the School of Medicine because they spoke Chinese on the Duke campus.

134. Plaintiff objected to these discriminatory practices including reporting concerns to a number of institutional channels.

135. On information and belief, Defendants gives favorable treatment to non-Asian employees, associated or employed, in the Pharmacology and Cancer Biology, Basic Sciences Department as evidenced by Defendant Duke's promotion and/or support of the following employees (comparators):

Sarah Goetz (white, female)
Donald Fox (white, male)
James Alvarez (white, male)
David MacAlpine (white, male)
Christopher Counter (white, male)
Ann Marie Pendergast (white, female)
Scott Floyd (white, male)
Deborah Muoio (white, female)
Dwight Koeberl (white, male)
Donald McDonnell (white, male)
Colin Duckett (white, male)
Daniel Lew (white, male)
Christopher Newgard (white, male)
Michael Kastan (white, male)
Sally Kornbluth (white, female)
Gerald Blobe (white, male)
Bernard Mathey Prevot (white, male)
Michael Boyce (white, male)

Andrew West (white, male)

**Plaintiff is Subjected to Unwarranted Investigations and Audits**

136. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 135 above as if fully set forth herein.

137. Plaintiff has been subjected to repeated and unwarranted audits and/or investigations and heightened scrutiny by Defendants' leadership.

138. The "cultural" audit was undefined so that Defendants could utilize this vehicle to interview Plaintiff's staff, students, and colleagues and question his performance and conduct, all in their effort to undermine Plaintiff's leadership role and interfere with his ability to teach, perform research, and give constructive feedback to his students and staff.

139. The "cultural" audit was undefined so that Defendant could utilize this scheme to send a message to Plaintiff's staff, students, and colleagues that he was under scrutiny and undermine his role as leader of the laboratory and damage his reputation.

140. The simultaneously conducted cultural and billing and compliance audits showed no significant improper actions by Plaintiff or misconduct by him or within his research laboratory.

141. Similarly, the September 6, 2019 staff member accusation and the January 21, 2020, postdoctoral fellow accusations were not substantiated.

**Interference With Plaintiff's Research Program**

142. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 141 above as if fully set forth herein.

143. Among other actions interfering with Plaintiff's research program, Defendants would not affirm to provide customary scholarship funds to support a newly entering ethnic minority student into Plaintiff's laboratory.

144. Among other actions interfering with Plaintiff's research program, Defendants implemented a hiring freeze on Plaintiff's research laboratory preventing him from taking on new students, and making new hiring offers to postdoctoral fellows ("post docs"), research associates, technicians and other employees necessary for his laboratory to operate with proficiency.

145. The hiring freeze resulted in Plaintiff having insufficient resources to maximize the performance

of his lab and the research projects being conducted therein, despite his successful ongoing procurement of external research funding.

146. Plaintiff was threatened with undefined consequences if he did not volunteer a withdrawal letter for a research project grant application to the National Institutes of Health in the Department of Health and Human Services ("NIH").

147. On or about September 11, 2019, the Defendants unilaterally withdrew the NIH grant application for a project submitted by Plaintiff. Accordingly, Plaintiff's professional and earning capabilities have been damaged.

**Plaintiff is Subjected to Unwarranted Denial of Access to His Lab, Students, Classrooms and to the Duke Campus and His Freedom of Speech is Circumscribed**

148. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 147 above as if fully set forth herein.

149. On or about October 18, 2019, through a written letter served by Defendant McDonnell, Plaintiff was unjustifiably told to remove himself from the campus, not have access to his lab, office, students, staff, classrooms and the Duke campus. Defendant prohibited Plaintiff from having meetings and conversations with his students and staff and other Duke staff. Defendants prohibited Plaintiff from attending professional meetings. Defendants prohibited Plaintiff from traveling to conferences and other universities to discuss his scholarly work. Defendants prohibited Plaintiff from discussing research with other Duke faculty and to others who do not work at Duke.

150. These orders resulted in an interference with Plaintiff's freedom of speech and ability to teach and conduct research as embodied by the Faculty Handbook and academic tenure.

151. Because of these orders, among other consequences, Plaintiff was subjected to harm, including but not limited to, damage to his professional and personal reputation, a loss of prospective job opportunities, a loss of opportunities to develop his research, a loss of career advancement, a loss of prospective research funding, a loss of scholarly output and a loss of monetary gains from professional engagements.

152. On information and belief, Defendants have been presenting false negative information and disparaging statements to persons including Plaintiff's students and/or staff about Plaintiff and his absence from the Duke campus.

153. On information and belief, Defendants have been making student and/or personnel placements that may not permit return to their prior positions and research/education with Plaintiff.

154. On information and belief, Defendants have denied Plaintiff access to a research scholar's talent by denying Plaintiff's request that a scholar be granted a visa for entry into the United States to conduct research with Plaintiff.

## Plaintiff is Subjected to Harassment, Bullying, Retaliation and Intimidation

155. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 154 above as if fully set forth herein.

156. At an October 8, 2019 meeting requested by Plaintiff, Defendant McDonnell chastised Plaintiff for, among other things related to body language, not making eye contact even though he was aware that it was Plaintiff's Asian culture not to make eye contact.

157. On or about October 18, 2019 Defendants, through a written letter, gave Plaintiff an order that he be subjected to an undefined evaluation with Defendants' selected, identified and affiliated doctor.

158. A letter dated October 10, 2019 drafted by Defendants and signed by Defendant McDonnell, but not received by Plaintiff until on or about December 3, 2019, only stated a requirement for an evaluation by two named evaluators: one was a non-medical doctor and the second was not identified by specialty.

159. Neither the October 10, 2019 or October 18, 2019 letter outlining Plaintiff's administrative leave stated a requirement of an evaluation by a specialist.

160. Following his request, Plaintiff was given the ability to designate a provider for the required fitness for duty examination.

161. Plaintiff was subjected to intimidation and retaliatory tactics continuously to shorten the time to identify an evaluator upon threats of being placed on an unpaid leave status.

162. In spite of the threat, Plaintiff complied with the demand and met the deadline to have the examination conducted.

163. On or about November 15, 2019 at 5:20 p.m. Defendant McDonnell sent Plaintiff another bullying email telling him that he had until November 20, 2019 at noon to identify another fitness for duty evaluator.

164. Plaintiff met the November 20th deadline for identifying a new evaluator and the name was

provided to both Dr. Epling and the Defendant's s attorney.

165.  After silence for nearly two weeks, Defendants sent a letter on December 3, 2019 potentially agreeing to allow Plaintiff to submit to an evaluation from a neutral physician.

166.  On or about December 3, 2019, Plaintiff scheduled an examination for December 11, 2019 with the independent physician.

167. On December 6, 2019, Plaintiff's physician contacted Dr. Epling for instructions and collaterals and provided Dr. Epling with her requested documentation identified in the letter dated December 3, 2019.

168. On or about December 11, 2019, Plaintiff was ready to take the examination, but learned that the scheduled examination had to be rescheduled because Defendants had not provided its material to the physician.

169. On December 11, 2019, Plaintiff contacted Dr. Epling and learned she had not made her contact with the physician.

170. On or about December 13, 2019, Defendant McDonnell sent Plaintiff another bullying email telling him that he had until December 31, 2019 to undergo the fitness for duty evaluation or else he would be placed on unpaid leave. This was done even though Plaintiff's prior appointment had been cancelled because of Defendants' failure to act and the new deadline set by Defendant McDonnell was during the holiday season when the evaluator had pre-scheduled travel plans.

171. Defendants  harassed and intimidated Plaintiff by, on information and belief, notifying at least one of his research funding sources that he was on leave from Duke University and on at least one other known grant, removed Plaintiff and substituted Defendant McDonnell as the Principal Investigator.

172. On February 6, 2020, only after Plaintiff inquired, Defendants scheduled a meeting on March 16, 2020 to discuss a return to work.

173. Plaintiff requested to move up the meeting, up on information and belief, after Plaintiff contacted the Duke Ombuds to request to Kate Hendricks that the meeting be moved up, it was rescheduled to February 18, 2020.

174. On February 18, 2020, Defendant Duke, among other statements, rejected Plaintiff's request for cultural training for Duke administrators and stated that he must submit to supervision by Defendant McDonnell.

175. At the February 24, 2020 subsequent meeting, Plaintiff was handed a printed contract pre-signed

by Defendant McDonnell and asked to sign on the spot containing unproven negative statements about Plaintiff.

176. Plaintiff requested of Defendants an electronic copy of the letter to suggest edits.

177. Plaintiff offered a revised agreement and offered to negotiate a final agreement.

178. Dr. Colin Duckett stated the agreement was not negotiable.

179. Plaintiff was placed on unpaid leave status.

180. Plaintiff was subsequently informed in writing that his research grants would be terminated and he would be subjected to termination if he did not sign Defendants' agreement by April 7, 2020.

181. On April 7, 2020, Plaintiff signed an agreement to avoid elimination of his research program, possible termination of his staff (including several on Duke-sponsored visas), displacement of his students, and termination of his employment.

182. On or about May 1, 2020, Plaintiff was informed that at least one of his research grants had been terminated.

### Duke Breached its Contract and Engaged in Fraudulent and Negligent Conduct

183. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 182 above as if fully set forth herein.

184. Defendant's School of Medicine induced Plaintiff to enter into an employment agreement based upon recruitment representations made to Plaintiff. Among those representations, Plaintiff was told that he would have academic freedom, would have access to students, would be able to conduct research as a Duke University faculty member, would lead a cancer metabolism initiative and would have a leadership role at the Duke Cancer Institute.

185. These representations were reinforced in the employment offer letter that stated as a full-time University employee, Plaintiff was hired as a tenure-track faculty member and would be subjected to all applicable University policies. The offer letter specifically identified the Duke Faculty Handbook as stating University policies and procedures Plaintiff would be subject to that applied to his hiring. Plaintiff accepted the offer and relied upon the offer letter's representations.

186. In addition to the understanding of these terms in the academic profession, Appendix C of the above referred to Duke Faculty Handbook ("Appendix C") has provisions regarding Academic Freedom and Academic Tenure. Among other items, it states that: "This document embodies an agreement between the president and the faculty as to policies and procedures with respect to

academic freedom, academic tenure, and certain matters of due process." With regard to academic freedom it states that the faculty has the freedom to "act and speak in his or her capacity as a citizen without institutional censure or discipline."

187. The ability to act or speak as a citizen was a material factor in the recruitment efforts of Defendants.

188. The ability to act or speak as a citizen was a material factor in Plaintiff's decision to accept employment with Defendants.

189. The letter to Plaintiff from Defendants dated October 18, 2019 put Plaintiff on an involuntary leave for an indefinite period of time and stated that Plaintiff was to have no contact (i.e. no communications) with Duke students, post-docs or staff or professional meetings while on the indefinite leave.

190. The letter to Plaintiff from Defendants dated October 18, 2019 curtailed Plaintiff from speaking to Duke students, post-docs, staff or have professional meetings with them or others, thereby violating the provision in Appendix C that a faculty member has the right to act and speak in his capacity as a citizen.

191. The letter to Plaintiff dated October 18, 2019 is an institutional censure and threatened institutional discipline for a violation of the prohibitions stated therein, in violation of Appendix C referred to above.

192. The above conduct constituted a breach of the employment contract with Plaintiff.

193. The letter to Plaintiff dated October 18, 2019 was reinforced by an email dated October 24, 2019 stating that Plaintiff was prohibited from interacting directly with his staff and trainees.

194. The above conduct was a material breach of the inducements to Plaintiff to accept the employment contract with Defendant Duke.

195. Plaintiff was deceived by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen.

196. Plaintiff was intentionally deceived by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen.

197. Plaintiff was damaged by the representation that as a faculty member he would have the right to act and speak in his capacity as a citizen. As a result of that deception he lost earnings and professional growth opportunities that would have been available had he not relied upon the deceitful representations.

198. Defendant Duke as Plaintiff's employer, acquired Plaintiff's trust by providing him with its Faculty Handbook and identifying it as an agreement that Plaintiff could rely upon. Defendants took advantage of the trust and confidence that Plaintiff relied upon by transferring Plaintiff's lab members and research projects to other Defendant Duke's faculty members so that Defendants would benefit financially and in reputation from the scientific knowledge and funding earned by Plaintiff.

199. Defendants created a false relationship to obtain the trust and confidence of Plaintiff and for their benefit. As a result of the trust falsely created, Plaintiff trusted Defendants to his detriment.

200. Defendant Duke was unjustly enriched by its suspension of Plaintiff from employment and its denial of Plaintiff's ability to act and speak in his capacity as a citizen in that Defendant Duke Plaintiff's employer, kept the lab members and research projects built upon Plaintiff's experience, knowledge and funding grants and sponsorships and is using his reputation, knowledge and abilities for its own benefit without the consent of Plaintiff.

201. Defendants were unjustly enriched because they continued to use Plaintiff's name and/or reputation for research grant funding after his suspension.

202. Defendants took the above described actions, knowing Plaintiff was relying upon a belief that Defendant Duke, as his employer, would act in good faith and would deal fairly with Plaintiff. Defendants violated its requirement in the employer/employee relationship to deal in good faith with Plaintiff and protect his ability to conduct research, develop grant funding and interact with students, staff and colleagues. Plaintiff has suffered harm in his professional reputation, professional development and ability for future earnings as a result of the failure of Defendants to act in good faith and fair dealings.

203. Defendants gave Plaintiff reason to rely upon the provision in Appendix C that as a faculty member he has the right to act and speak in his capacity as a citizen because they made it part of his employment offer letter. Plaintiff accepted that offer, giving up other employment opportunities. Defendants negligently misrepresented to Plaintiff that he could rely upon the fact that if he accepted employment at Defendant Duke as a faculty member, he would have the right to act and speak in his capacity as a citizen. This right was denied to Plaintiff who has been damaged in his professional career and earnings potential.

204. Plaintiff seeks monetary damages and a declaratory judgment to correct the wrongs of Defendants' conduct.

## DAMAGES

205. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 204 above as if fully set forth herein.

206. Defendants have discriminated and retaliated against Plaintiff on the basis of his race, color and/or national origin and because they perceived him to have a disability.

207. Defendants have retaliated against Plaintiff because of his opposition to race, color and/or national origin discrimination and his opposition to Defendants' perception of disability.

208. Defendants have breached their contract with Plaintiff.

209. Defendants have engaged in Fraud, Negligent Misrepresentation, Breach of Covenant of Good Faith and Fair Dealings and Unjust Enrichment with regard to Plaintiff.

210. As a result of Defendants' unlawful and bad faith actions, Plaintiff has suffered lost wages, lost benefits, lost leadership opportunities, emotional distress and other compensatory damages.

### Causes of Action

### FIRST CAUSE OF ACTION

### RACIAL, COLOR AND/OR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT

211. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 210 above as if fully set forth herein.

212. The actions of Defendants, as set forth herein, constitute intentional discrimination and/or retaliation against Plaintiff on the basis of his sex, race, color and/or national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A (a)(1).

213. Defendants engaged in discriminatory and/or retaliatory practices against Plaintiff with either malice or reckless indifference to the federally protected rights of Plaintiff to be free from racial, color and/or national origin discrimination and/or retaliation in the workplace, as set forth in 42 U.S.C. § 1981A(b)(1).

214. As a result of the unlawful actions of Defendants, as set forth herein, Plaintiff has suffered loss of wages, other financial compensation and benefits of employment.

215. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

216. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered

compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

217. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (Title VII) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

218. Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a)(1) and (b)(1) in an amount exceeding $25,000 as a proximate result of Defendants' conduct alleged herein.

219. Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## SECOND CAUSE OF ACTION
### RETALIATION IN VIOLATION OF THE
### CIVIL RIGHTS ACT OF 1964 AND 42 USC § 1983

220. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 219 above as if fully set forth herein.

221. Plaintiff objected to discrimination against his on the basis of his race, color and national origin.

222. Plaintiff filed seven separate Charges of Discrimination against Defendants on the basis of protected characteristics and protected activities.

223. The actions of Defendants as set forth herein constitute retaliation against Plaintiff for the assertion of his right to be free from racial, color and/or national origin discrimination. Such retaliation is in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).

224. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered the loss of wages, other compensation, benefits of employment and professional development.

225. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

226. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

227. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (Title VII) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.

228. Defendants engaged in discrimination and retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from racial, color and national origin discrimination in the workplace, as set forth in 42 U.S.C. § 1981a(b)(1) § and 1983.

229. Defendants engaged in discrimination and retaliation against Plaintiff, denying him due process and equal protection of the law with regard to race, color and national origin in violation of 42 U.S.C § 1981a(b)(1) § and 1983.

230. Plaintiff is entitled to punitive damages as provided by 42 U.S.C. § 1981 in an amount exceeding $25,000 as a proximate result of Defendants' conduct as alleged herein.

231. Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## THIRD CAUSE OF ACTION
### VIOLATION OF THE RECONSTRUCTION ERA STATUTES

232. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 231 above as if fully set forth herein.

233. The actions of Defendants as set forth herein constitute intentional discrimination and/or retaliation on the basis of Plaintiff's race and color in violation of the Reconstruction Era Statutes, 42 U.S.C. § 1981.

234. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered the loss of wages, other forms of compensation and benefits of employment.

235. Plaintiff is entitled to recover his economic losses in an amount greater than $25,000. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.

236. Plaintiff is entitled to compensatory damages as provided by the Reconstruction Era Statutes, 42 U.S.C. § 1981, in an amount exceeding $25,000 as a proximate result of Defendants' conduct alleged herein.

237. Defendants engaged in race and color discrimination and/or retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from race and color discrimination in the workplace.

238. Plaintiff is entitled to punitive damages in an amount exceeding $25,000 as a proximate result of Defendants' conduct as alleged herein.

239. Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## <u>FOURTH CAUSE OF ACTION</u>
### BREACH OF CONTRACT

240. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 239 above as if fully set forth herein.

241. Defendants were and are a party to a written contract for employment and tenure. Under the terms of this contract, Defendants were and are obligated to adhere to the policies and procedures with respect to academic freedom, academic tenure, and certain matters of due process.

242. Pursuant to the terms of the contract, under Academic Freedom and Academic Tenure, Plaintiff was able "To act and to speak in his or her capacity as a citizen without institutional censorship or discipline."

243. Plaintiff has a binding and enforceable contract with Defendant Duke, as described herein.

244. Plaintiff's contract, which incorporated the Duke Faculty Handbook by reference, was violated when he was suspended because such suspension violated Duke's promise to Plaintiff that he may "act and . . . speak in his capacity as a citizen without institutional censorship or discipline." As an example, Plaintiff's suspension because of discrimination, retaliation and Defendant McDonnell's treatment of professors believed to have disability is in violation of the contract.

245. The decisions to suspended Plaintiff failed to abide by the policy provided in the Duke Faculty Handbook and Appendix C thereto, as described herein.

246. As described above, Defendant Duke has intentionally failed and neglected to perform under the contract by placing Plaintiff on unjustified leave, refusing to allow Plaintiff to have contact with Duke students, post-docs or staff, and attend professional meetings and requiring him to get a fitness for duty evaluation.

247. Plaintiff has complied with all material terms of the contract.

248. Defendants' conduct, as alleged herein, constitutes breach of contract with regard to their hiring agreement, and incorporated Handbook and SoM Policies. This was accompanied by fraudulent and other willful and wanton tortious acts.

249. By reason of the foregoing, Plaintiff has been injured by Defendants' tortious and fraudulent acts.

250. As a result of Defendant Duke's breach of contract, Plaintiff has incurred damages, as will be proven at trial.

251. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.

## FIFTH CAUSE OF ACTION
### FRAUD

252. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 251 above as if fully set forth herein.

253. In 2015, when Plaintiff was employed by Cornell, during the negotiations for the Plaintiff to be employed by Defendant Duke, Defendants represented that Plaintiff would be able to act or speak without being censored or disciplined.

254. At the time of the negotiations for the Plaintiff to be employed by Defendant Duke, Defendants touted that Plaintiff would quickly get tenure.

255. During the negotiations, Plaintiff was told his position would be a partnership hire across three units: DCI, Duke Molecular Physiology Institute (DMPI) and the Pharmacology and Cancer Biology. Defendant McDonnell knew this to be untrue and this untruth benefited him because he had Plaintiff exclusively work for him and bring grant funding, Plaintiff's name recognition and Defendant Duke's financial resources to Defendant McDonnell's unit.

256. At the time Plaintiff was offered the position with Defendant Duke, Defendants did not intend to abide by the contract, Faculty Handbook and/or policies.

257. The above misrepresentations of the Defendants were intentional, material, non-truths amounting to fraud.

258. Defendants McDonnell, Christopher Newgard, and Jeffrey Rathmell as representatives of Duke, intentionally made these material misrepresentations because they knew personal and professional benefits would result (because salaries and budgets are determined, in part, by grant funding) if they prevented Plaintiff from going to the University of Texas - MD Anderson Cancer Center or remaining at Cornell.

259.    Defendant McDonnell had control over the tenure process for his unit and because of his control, on information and belief, he knew that he would not be providing tenure quickly, despite his representations to Plaintiff.

260.    Defendants committed a fraud by incorporating the language of the Faculty Handbook benefits that include principles of academic freedom, shared governance and due process when they knew that they would give deference to Defendant McDonnell when there was a conflict between these stated rights and Defendant McDonnell's decisions.

261.    Defendants made false representation or concealment of a material fact that was intended to and did in fact reasonably induce reliance and resulted in injury or damage to Plaintiff. Defendants knowingly made material representations of material fact as noted herein. At the time of making the representations, the Defendants knew or should have known that the representations were false and that Plaintiff would not have entered into the agreement and accepted the employment offer letter had Plaintiff known that the representations were false.

262.    As a result of his reliance on the truth of the material terms of the agreement, Plaintiff has been damaged as set forth herein, and said damages directly result from the acts and omissions of Defendants and its agents and representatives of the Defendants.

263.    But for the representations, Plaintiff would not have agreed to accept the employment.

264.    As a result of these bad-faith actions, Plaintiff has lost professional opportunities, monetary compensation, has suffered distress and other damages.

265.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## SIXTH CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT

266.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 265 above as if fully set forth herein.

267.    Defendants, by and through its agents including Jeffrey Rathmell, and Christopher Newgard induced Plaintiff to work for Duke in or about calendar year 2015 from Cornell University.

268.    During the recruitment, Defendants did not intend to abide by the contract, Faculty Handbook and/or policies.

269.     Defendants' intention at the time of recruitment was to obtain the funding tied to Plaintiff's reputation and research for their own benefits and to make fraudulent representations to induce Plaintiff to come to their institution for Defendants' monetary gain.

270.     False recruitment representations were made to Plaintiff by Defendants that included, but were not limited to: Quick tenure and Academic Freedom.

271.     These recruitment promises were not kept as evidenced by the following facts, including but not limited to, his abilities to speak as a citizen without censure--Plaintiff was censured and/or disciplined for speaking on several occasions, including when he voiced concern over Defendants not accommodating a handicapped student as early as August 2018 and as late as June 2019. In 2019, Plaintiff was denied abilities to conduct research and teach without censure.

272.     Additionally, Plaintiff was promised a leadership position at the Duke Cancer Institute (DCI) and promises to lead an initiative in cancer and metabolism across campus that never materialized.

273.     Plaintiff was promised that he would lead the hiring of at least one additional faculty member as part of the DCI initiative.  Plaintiff was not admitted to a faculty search committee that was used to make an offer to the faculty member.

274.     Plaintiff was promised that his position would be a partnership hire across three institutions (DCI, Duke Molecular Physiology Institute (DMPI), and the Pharmacology and Cancer Biology) without defined reporting to any one entity and thus presumably reporting to the Dean.  Plaintiff was subjected to unilateral reporting to Defendant McDonnell.

275.     Plaintiff was promised staffing support associated with the campus metabolism initiative would be provided, but never occurred.

276.     Plaintiff was promised influence over activities at the Duke Molecular Physiology Institute (DMPI).  Plaintiff has never once been invited to be formally involved in any decision at the DMPI.

277.     Plaintiff was promised an overall position of leadership and authority at Defendant Duke.  Upon his employment Plaintiff was told by Defendant McDonnell that he is not a

person of high stature at Duke.

278.     Plaintiff was promised during the recruitment that he would not face hostility from colleagues that may perceive him as competition on campus.  In contrast, at a meeting with the Dean's office with Moria Montalbano, Associate Dean, Space Management & Research Resources, in attendance in August 2015 shortly after Plaintiff arrived on campus, she informed Plaintiff that his work and capabilities will create undue competition on campus with other units. This was in contrast to previously stated recruitment representations.

279.     In an employment offer letter dated March 11, 2015 statements were made as  follows:

   a.   "you will be subject to all applicable University policies…including… Faculty Handbook…[Med School website].…"  Plaintiff was not given the benefits of the Faculty Handbook.

   b.   "you will … play a leadership role in the DCI in helping to drive progress in this critical field of cancer".  No such leadership role ever materialized.  On several occasions, actions taken by Defendant contradicted this representation. This included a lack of financial support from the DCI, lack of admission to DCI committees, lack of invitation to all DCI fundraising events.

   c.   "A mentoring committee comprised of three tenured professors will be appointed to assist you as you transition into your new faculty position."  No such committee was ever formed.

   d.   "To facilitate these efforts, we will provide 150K to establish access to the DMPI "storefront"  laboratory…." Plaintiff was coerced to give up those funds upon his arrival.

280.     In a written statement dated February 18, 2015, in response to questions from Plaintiff regarding his prospective employment, the following statements were made by Defendant McDonnell to Plaintiff:

   a.   "In the basic sciences at Duke the only way that your salary can be challenged is of [sic] you decide to 'give up' and not try to support your research. However, in 21 years at Duke I have never heard of a salary decrease."

Plaintiff was subjected to a salary decrease in March 2020.

    b.  "every dollar over 50% of your salary that you cover on grants that 25C is paid as a salary bonus and 25C is paid to your discretionary account". The promised bonuses were never provided.

    c.  In response to a request for computer room space for students and staff who do computer work, Plaintiff was told by Defendant McDonnell, "This can all be figured out. We can even move people around if needs be. I have a few options open to us." Despite numerous requests by Plaintiff, computer work room space was never provided.

281.    Duke made the aforementioned representations to Plaintiff in order to induce Plaintiff to enter into a faculty employment relationship with the same.

282.    The aforementioned representations were material to Plaintiff's acceptance of the contract with Duke.

283.    At the time of recruitment Duke represented to Plaintiff that the Duke Faculty Handbook was a part of the proposed contract as well as the other promises discussed above. Defendants knew its representations to be false or were reckless in its disregard for the truth.

284.    Defendants made the aforementioned representations with the intention to deceive and they were reasonably calculated to deceive Plaintiff.

285.    Plaintiff reasonably relied upon the aforementioned representations and was in fact deceived by Defendants. In particular, Plaintiff relied upon the aforementioned representations to his detriment by entering into the contract and exercising rights believed to be included therein, as set forth above.

286.    Defendants' actions resulted in actual damages to Plaintiff, as will be proven at trial.

## SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD

287.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 286 above as if fully set forth herein.

288. In his recruitment and as a Professor, Defendants owed Plaintiff the utmost duty of care, including the duty to disclose every material fact within their knowledge to which Plaintiff was not privy in the procurement of Plaintiff's employment.

289. As an example, Plaintiff was told by Defendant Duke by and through its agents Jeffrey Rathmell and/or Christopher Newgard and/or Defendant McDonnell during the recruitment that the relationship between Plaintiff and Defendant Duke would be one of trust that his research and teaching would be protected and that he should not be concerned with the terms in the employment offer letter. As persuasion to Plaintiff to rely upon this trusted relationship and the care that would be provided to Plaintiff, Defendants referred Plaintiff to the stature of Defendant Duke and the principles of academic freedom and tenure stated in the Faculty Handbook.

290. As a result of the representation of a confidential and trustworthy type of relationship by Defendants, Plaintiff agreed to leave his employment at Cornell University for employment at Defendant Duke.

291. Plaintiff relied on the confidential relationship with Defendants and their representations what they would allow him to perform his research and teaching to his capabilities with appropriate support and fairness.

292. Defendants took advantage of their position of trust by not abiding by the DFH and not granting him the quick tenure promised.

293. Defendants hurt Plaintiff by not abiding by the DFH in that, for example, he was placed on leave for exercising the right to academic freedom and freedom from censure.

294. Defendants hurt Plaintiff by delaying his tenure.

295. Defendants further hurt Plaintiff by placing a personnel freeze on his lab, unjustifiably investigating his laboratory, interfering with his research grants, suspending him and placing him on unpaid leave. In doing so, Defendants breached this aforementioned trust and confidence. Plaintiff suffered harm to his career progression including future earnings, damage to his reputation and loss of his positive research and teaching trajectory that includes career harm to students he was supervising.

296.    Defendants benefitted by continuing to take grant funding earned as a result of Plaintiff's knowledge, reputation and experience. Plaintiff was harmed by the removal from him of the talent and accumulated knowledge developed in his laboratory in the form of research ideas, know how and ongoing training causing harm to his academic status and reputation and resulting in further harm to him because his recruited students and trainees would not be given the training, skills and education resulting from Plaintiff's experience and skills. This was done to the benefit of Defendants and their agents who benefited from Plaintiff's reputation and grant funding capabilities and from the highly gifted personnel/students that he recruited and developed within Defendant Duke. Plaintiff was harmed because his stature and career trajectory relies on his reputation, his ability to train students, the future success of his students and Plaintiff's ability to receive grant funding for his research. Defendants benefited from taking advantage of Plaintiff through an enhancement of their reputation, an increase in grant funding monies and in other manners.

297.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## EIGHTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (in Alternative to Breach of Contract)

298.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 297 above as if fully set forth herein.

299.    By virtue of the contractual relationship between the Defendant and Plaintiff, Defendant had an implied duty of good faith and fair dealing, which Defendant has breached by engaging in the numerous acts and practices set forth in this Complaint.

300.    Defendants have further breached its implied duty of good faith and fair dealing by refusing to provide adequate and/or legitimate explanations for adverse actions and practices set forth in this Complaint.

301.    By reason of the foregoing, Defendants have breached the covenant of good faith and fair dealing owed to Plaintiff.

302.    Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

303.     Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 302 above as if fully set forth herein.

304.     Defendants breached their duty as described in the Complaint.

305.     As an example, Defendants have a duty to use reasonable care to ensure that its representations to Plaintiff in its employment offer letter and documents incorporated therein were true, accurate and complete, and were fairly and adequately communicated to Plaintiff. Defendant negligently failed to do so.

306.     Defendant Duke, by and through its agents, Dr. Jeffrey Rathmell, Dr. Christopher Newgard and Defendant McDonnell negligently represented to Plaintiff orally that academic tenure as would be described in the Duke Faculty Handbook was a component of his prospective contract with Defendant Duke.

307.     At the time of the negotiations for the Plaintiff to be hired by Defendant Duke, Defendants negligently advised Plaintiff he would quickly get tenure.

308.     Defendant Duke by and through its agents, including Defendant McDonnell, made the aforementioned representation to Plaintiff in response to his requests for clarification about the scope of the contract. Defendants encouraged Plaintiff to trust them and take them at their word.

309.     During the negotiations, Plaintiff's was negligently advised that his position would be a partnership hire across three institutions: DCI, DMPI and the Pharmacology and Cancer Biology. Defendant McDonnell knew these representations regarding the partnership to be untrue. He benefited because Plaintiff exclusively worked for him and brought grant funding and recognition to Defendant McDonnell's institution.

310.     In making the aforementioned representations to Plaintiff, Defendant Duke, by and through its agents including but not limited to Dr. Jeffrey Rathmell, Defendant McDonnell and Dr. Christopher Newgard, owed Plaintiff a duty of care.

311.     At the time that Defendants represented to Plaintiff that the DFH was a part of the proposed contract, Defendants, by and through its agent, Dr. Rathmell, failed to exercise reasonable care.

312.    In making the aforementioned representations to Plaintiff, Defendant Duke, by and through its agent, Dr. Jeffrey Rathmell, owed Plaintiff a duty of care and he failed to exercise that reasonable care.

313.    Plaintiff reasonably relied upon the aforementioned representations and was in fact deceived by Defendant Duke's representations. In particular, Plaintiff relied upon the aforementioned representations to his detriment by entering the contract and exercising rights he believed to be included therein, as set forth above.

314.    The aforementioned representations were material to Plaintiff's acceptance of the contract with Defendant Duke.

315.    Defendants' actions resulted in actual damages to Plaintiff, as will be proven at trial.

316.    As a direct and proximate result of the negligence described above, Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## TENTH CAUSE OF ACTION
### UNJUST ENRICHMENT (in the Alternative of Breach of Contract)

317.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 316 above as if fully set forth herein.

318.    Upon employing Plaintiff, Defendants knew Plaintiff was a highly regarded member of the scientific community and as such was able to secure funding pursuant to his name and professional reputation.

319.    Upon information and belief, Defendants notified at least one of Plaintiff research funding sources that he was on leave from Duke University and on at least one known grant removed Plaintiff and substituted Defendant McDonnell as the Principal Investigator.

320.    While delaying, reducing and denying Plaintiff the access to use facilities, doing his research, and remaining the Principal Investigator on his research grants, upon information and belief, Defendants have received the benefit of the grant funds and research generated by Plaintiff and his students and/or staff while wrongfully retaining monies it received that were intended to pay for such projects of the Locasale Lab.

321.    Plaintiff secured grant funding and recognition for Defendant Duke as a result of his name, talent and professional reputation.

322.    Defendants wrongfully failed to timely and fully pay Plaintiff during the unpaid leave

status, but, upon information and belief, continued to collect the grant funding for his research.

323. As a result of the foregoing matters, among other things, Defendants has been unjustly enriched.

324. Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## ELEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

325. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 324 above as if fully set forth herein.

326. Defendants suspended Plaintiff, but continued to benefit from his name, grants and funding by, among other matters, upon information and belief, transferring his students, research projects and related funding to other faculty members and as such Defendant Duke became unjustly enriched

327. Defendants suspended Plaintiff, but continued to use his name, reputation and accomplishments to their benefit for grant funding and to promote research at the University as illustrated by Defendant Duke's promotional websites. As such Defendant Duke became unjustly enriched.

328. Plaintiff is entitled to recover for economic losses and punitive damages in an amount greater than $25,000.

## TWELFTH CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION IN VIOLATION
## OF THE ADA & ADAAA

329. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 328 above as if fully set forth herein.

330. 42 U.S.C. § 12112(a) provides that is an unlawful employment practice for an employer to, "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . other terms, conditions, and privileges of employment."

331. At all times relevant herein, Plaintiff was perceived to be disabled, within the ADAAA in that regarding a perceived mental and/or substance abuse impairment, (1) Plaintiff was perceived to have had a physical or mental impairment that substantially limited one or more major life activities; (2) Plaintiff was regarded by Defendants as having such impairments.

332.    Plaintiff was subjected to harassment based upon a perceived disability. Among other things, he was placed on leave and forced to see a mental health evaluator.

333.    The harassment was sufficiently pervasive or severe so as to alter the terms, conditions, and privileges of his employment.

334.    The foregoing harassment is attributable to and was caused by the acts of Defendants.

335.    Defendants have engaged in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

336.    At all times relevant herein, Plaintiff was perceived to be disabled, within the ADAAA in that Defendants perceived Plaintiff to have a physical or mental impairment requiring an evaluation and consultations as required; Plaintiff was regarded as having such impairments.

337.    Plaintiff engaged in protected activity under the ADA and ADAAA by complaining about the ongoing discrimination and harassment on the basis of disability at Duke.

338.    Upon information and belief, following Plaintiff's protected activity, his suspected condition was published by Defendant Duke to third parties, including to students, as a form of retaliation.

339.    The adverse employment actions taken by Defendants were because of, and in response to, Plaintiff's complaints of harassment and discrimination, including those based upon a perceived disability.

340.    Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981a.

341.    Defendants' discriminatory conduct, in violation of ADA and ADAAA, has caused Plaintiff to suffer loss of pay, benefits, opportunities, and prestige.

342.    Defendants have engaged in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

## THIRTEENTH CASUE OF ACTION
## VIOLATION OF ANTI-TRUST LAWS

343.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 342 above as if fully set forth herein.

344.     In a properly functioning and lawfully competitive labor market, Defendant Duke and other Universities would compete for faculty members and scientific staff members and seek to hire current employees of each other.

345.     This competition would include Defendant Duke competing with other Universities to keep or recruit Plaintiff at an institution as with credit for his experience. Through lateral or upward hiring, a competitive academic or medical institution is able to obtain trained skill labor, such as Plaintiff, by hiring an employee from the rival.

346.     As an example, during his previous employment at Cornell University, Defendant Duke recruited Plaintiff to Defendant Duke based on his identification and credentials as a faculty member at Cornell University.

347.     Defendants prevented Plaintiff from identifying himself as a Duke professor and obtaining credit for his tenure and experience.

348.     By denying Plaintiff the ability to obtain credit for his experience and tenure, Defendants forced Plaintiff to be treated as an almost novice employee and to lose credit for earning his status as a tenured professor.  Plaintiff lost his value in the market because by not allowing Plaintiff to state his credentials Defendants created a void of information for Plaintiff's almost five years with Defendant Duke. Any competing institutions would not be interested in Plaintiff without knowledge of his Duke employment because they will not see the benefit from his experience and would see him as a novice who would require the training of a minimally experienced faculty member.

349.      For these reasons and others, Plaintiff's ability to compete for new employment as a lateral or upward hire requires that he not being restrained by Defendants from disclosing his experience when attempting to obtain employment, particularly from those employers looking for highly trained and highly skilled scientists, with already established relationships with necessary trained laboratory support staff.

350.     The restraint of Plaintiff's ability to identify his Defendant Duke affiliation had a significant impact on his being able to compete in the job market.

351.     Defendant Duke misused its existing power and control of a position in the market to restrain competition by blocking Plaintiff from using his employment identity in order to apply or obtain new employment, therefore, Defendant Duke preserved or enlarged its market position.

352.    As an example of their unlawful restraint, Plaintiff had an employment opportunity in Chicago and was denied permission by Defendants to attend and identify his employment with Duke as a tenured professor.

353.    Defendant Duke preserved and enlarged its market position by restraining Plaintiff's ability to compete in the academic marketplace.

354.    Defendants' actions resulted in actual damages to Plaintiff, as will be proven at trial.

355.    In addition to awarding Plaintiff monetary damages, Defendants should be restrained from this type of conduct and Plaintiff should be granted declaratory relief stating that this conduct was unlawful.

## FOURTEENTH CAUSE OF ACTION
### DEFAMATION (SLANDER PER QUOD)

356.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 355 above as if fully set forth herein.

357.    Upon information and belief, Defendants, including specifically Defendant McDonnell have made false, disparaging statements about Plaintiff and communicated these statements to other parties at Duke University.

358.    Before publication of disparaging statements, Plaintiff was a well-respected member of the Duke University staff in various capacities. He was well respected as a speaker, which is reflected in the fact that several universities and organizations retained him to speak. Plaintiff also held  the esteemed position as Principal Investigator without any notice of significant complaints or significant criticism.

359.    On or about October 8 2019, Defendant McDonnell engaged in a campaign to damage the reputation of Plaintiff with Duke leadership present including Dr. Ann Brown, Dr. Colin Duckett, and Duke Ombuds Thomas Metzloff present, by stating  that Plaintiff is "a liar", "acting like a child", and "abus(ive)". This interfered with Plaintiffs ability utilize his skills in the scientific community.

360.    As additional illustrative examples, on information and belief, on or about October 29, 2019 and during subsequent meetings, Defendant McDonnell, in the presence of at least ten students and staff who study and work with Plaintiff, stated that Plaintiff: "has a disdain for authority", "treated me like crap", "told me to go to hell", "has gotten too big for his boots",

"a graduate student was abandoned by Plaintiff", is "rude", and other later statements to members of this group such as he is "being an idiot".

361. As further illustrative examples, on information and belief, on or around March 12, 2020, Defendant McDonnell in the presence of at least six of Plaintiff's students and staff stated that Plaintiff: "doesn't care about you" and  neglected his duty by not signing a contract.

362. These false statements were intentionally designed to undermine Plaintiff's stature at Duke and impeach him in his professional abilities because they came from a Duke authority who informed students and staff who relied on Plaintiff's job performance that Plaintiff could not perform his job or his duties as a citizen.

363. Defendant McDonnell and his supervisors knew that these and other defamatory allegations were false and/or acted with reckless disregard with respect to their truth or falsity, and/or failed to exercise ordinary care in determining their truth or falsity prior to making the communications.

364. Defendant McDonnell's statements were malicious in that they were made with the intent to harm Plaintiff and in bad faith.

365. To the extent that Defendant McDonnell held any qualified privileges or immunity to make these communications, Defendant McDonnell abused those privileges or immunity because he was primarily motivated by ill will to damage Plaintiff in making the communications, or he made the statements without belief or grounds for belief in its truth.

366. Plaintiff was harmed because among other reasons, Defendant McDonnell impinged on his credibility and stature at Duke.

367. Plaintiff was harmed because Defendant impinged on his credibility and stature with regard to Duke students who rely on among other things, Plaintiff's integrity, his leadership, and his job capabilities.

368. Dr. McDonnell's defamatory communication was made within the scope of his employment with Defendant.

369. Defendant Duke, as Defendant McDonnell's employer, is liable to Plaintiff for Defendant McDonnell's defamatory communication under respondeat superior.

370.    Defendant Duke is liable for the slanderous actions of Defendant McDonnell in that Defendant Duke had actual or constructive knowledge of the behavior, directly approved of or failed to take adequate action to stop such behavior, and thereby ratified such behavior.

371.    Defendant Duke acted wantonly, willfully, and in disregard of the protected rights of Plaintiff.

372.    Plaintiff is entitled to actual, compensatory, and punitive damages as a consequence of the Defendant's slanderous actions.

373.    In the alternative, Plaintiff has been proximately injured as a result of Defendant's actions and has lost prospective earnings by having his professional reputation harmed by Defendants false statements.

374.    Plaintiff has suffered damages as a result of Defendants defamation, including, but not limited to, lost compensation and wages, out of pocket expenses, emotional distress, and damage to his professional reputation.

## FIFTEENTH CAUSE OF ACTION
## DEFAMATION (SLANDER PER SE)

375.    Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 374 above as if fully set forth herein.

376.    Upon information and belief, Defendants, including specifically Defendant McDonnell, have made false, disparaging statements about Plaintiff and communicated these statements to other parties at Defendant Duke.

377.    Before the publication of disparaging statements, Plaintiff was a well-respected member of the Duke University faculty in various capacities. He was well respected as a speaker, which is reflected in the fact that several universities and organizations retained him to speak to represent Defendant Duke. Plaintiff also held the position as Principal Investigator without any notice of complaints or significant criticism.

378.    On or about October 8 2019, Defendant McDonnell engaged in a campaign to damage the reputation of Plaintiff with Duke leadership present including Dr. Ann Brown, Dr. Colin Duckett, and Duke Ombuds Thomas Metzloff present, by stating that Plaintiff is "a liar", "acting like a child", and "abus(ive)". This interfered with Plaintiff's ability to utilize his skills in the scientific community.

379.     As additional illustrative examples, on information and belief, on or about October 29, 2019 and during subsequent meetings, Defendant McDonnell, in the presence of at least ten students and staff who study and work with Plaintiff, stated that Plaintiff: "has a disdain for authority", "treated me like crap", "told me to go to hell", "has gotten too big for his boots", "a graduate student was abandoned by Plaintiff", is "rude", and other statement such as he is "being an idiot".

380.     As further illustrative examples, on information and belief, on or around March 12, 2020, Defendant McDonnell in the presence of at least six of Plaintiff's students and staff stated that Plaintiff: "doesn't care about you", and neglected his duty by not signing a contract.

381.     Plaintiff works to build his reputation in the scientific community by hiring and recruiting students.

382.     Defendant McDonnell's per se defamatory statements plainly and directly maligned his reputation for honesty and integrity and impeached Plaintiff in his profession thereby making malice and damages deemed presumed by proof of publication.

383.     Defendant McDonnell's false statements to third parties are slander per se in that they impeached Plaintiff's professional reputation for high performance, honesty and integrity and held him up to disgrace, ridicule, and contempt.

384.     Plaintiff is entitled to actual, compensatory, and punitive damages as a consequence of the Defendant's slanderous actions.

## SIXTEENTH CAUSE OF ACTION
### DEFAMATION (LIBEL PER SE)

385.     Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 384 above as if fully set forth herein.

386.     Defendant has made false disparaging statements in writing about Plaintiff and communicated these statements to other parties.

387.     Before the publication of the written disparaging statements, Plaintiff was a well-respected member of the Duke University staff in various capacities. He was well respected as a speaker, which is reflected in the fact that several universities and organizations retained him to speak to represent Defendant Duke. Plaintiff also held the position as Principal Investigator without any notice of complaints or significant criticism.

388.    As a further illustrative example, a letter from Duke's Office of Counsel and Deputy Counsel Kate Hendricks dated December 3, 2019 stated that Plaintiff was placed on leave pursuant to a suspected violation in a substance abuse policy due to false evidence of impairment.

389.    As an illustrative and non-exhaustive example on October 18, 2019, Defendant McDonnell published the above described letter addressed to Plaintiff to Dr. Carol Epling, Dr. Colin Duckett, Dr. Ann Brown, and Sara-Jane Raines, Assistant Chief of the Duke Campus Police Department, on information and belief, the libel is continuing.

390.    The October 18, 2019 letter stated: "(During an October 8, 2019 meeting), your communications and responses were unusual and troubling", "(you are) inappropriate, harmful and unprofessional", "(you ) violated our expectations for respectful treatment of others, for supportive and effective mentoring of others, and for sustaining an environment conducive of scientific integrity." , "(Y)ou and I,…, have discussed each of these instances extensively", "In each one (of these instances) and often your interpersonal communication, was harmful, inappropriate, and unprofessional", "your actions have harmed others".

391.    As a further illustrative example, a letter from Duke's Office of Counsel and Deputy Counsel Kate Hendricks dated December 3, 2019 stated that Plaintiff was placed on leave and required "the evaluation of Dr. Locasale pursuant to its Substance Abuse Policy…which requires evaluation of employees who engage in behavior or action that demonstrates impairment in the workplace."

392.    Upon information and belief, an agent of Defendant Duke communicated this false allegation of impairment regarding Plaintiff to Duke's Counsel Kate Hendricks, who was not present at the October 8, 2019 or October 18, 2019 meeting.

393.    Defendant McDonnell's false statements in the October 18, 2019 letter were malicious in that they were made with the intent to harm Plaintiff and in bad faith.

394.    As an example of malicious and bad intent, the statements directly impinged on Plaintiff's reputation because an authority questioned whether he can capably and safely perform his job requirements or maintain his place as a citizen as exemplified by Defendant McDonnell's copying the letter to the Assistant Chief of the Duke Police Department

395.    To the extent that Defendant McDonnell held any qualified privileges or immunity to make these communications, Defendant McDonnell abused those privileges or immunity

because he was primarily motivated by ill will to damage Plaintiff in making the communications, or he made the report without belief or grounds for belief in its truth.

396. Defendants' published letters are libel because the statements were made intentionally, done with malice because they are false and intended to damage Plaintiff's reputation with Duke and the Durham community as well because they were further communicated to the Police Department. This caused Plaintiff harm in that they damaged his reputation, created emotional distress, were used to justify adverse employment actions, used to limit future employment opportunities, among other things.

397. Defendants' statement about a need for an evaluation pursuant to actions that demonstrate an impairment in the workplace requiring evaluation as a suspected substance abuse policy violation is libel per se.

398. Plaintiff has suffered damages as a result of Defendants' libel per se, including, but not limited to, lost compensation and wages, out of pocket expenses, emotional distress, and damage to his professional reputation.

## SEVENTEETH CAUSE OF ACTION
### DEFAMATION (LIBEL PER QUOD )

399. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 398 above as if fully set forth herein.

400. Defendants have made false disparaging statements in writing about Plaintiff and communicated these statements to other parties.

401. Before the publication of written disparaging statements, as described in the this Complaint, Plaintiff was a well-respected member of the Duke University staff in various capacities. He was well respected as a speaker, which is reflected in the fact that several universities and organizations retained him to speak. Plaintiff also held the position as Principal Investigator without any notice of complaints or significant criticism.

402. Defendants' statements were malicious in that they were made with the intent to harm Plaintiff and in bad faith.

403. As an illustrative and non-exhaustive example, on September 26 2019, Defendant Duke's Office of Audit of Risk and Compliance published an audit report to Plaintiff and copied it to Dr. McDonnell, Dr. Duckett, Dr. Brown, Dr. Scott Gibson, Dr. Klotman, Leigh

P. Goller - Chief Audit, Risk, and Compliance Officer, Geeta Swamy - Vice Dean for Scientific Integrity, Duke University School of Medicine, Vanessa Peoples - Sponsored Programs Administration and Compliance Audit Manager and Kate Hendricks - Deputy Counsel Duke University containing information about Plaintiff.

404.    As an illustrative and non-exhaustive example, in the background and scope section of the report, the report stated: "The PI shared SOM leadership email correspondence with lab members regarding the lab's culture. In response, some current lab members wrote SOM leadership attesting to the developmental opportunities and positive mentoring experience within the lab. Due to conflicting accounts and certain recognized/known historical conditions in the lab, the SOM requested the Office of Audit, Risk and Compliance (OARC) perform an organization review." (Emphasis added.)

405.    Upon information and belief, this was false because the SoM had requested that the OARC perform a review of Plaintiff's lab before receiving the statements attesting to the positive attributes of Plaintiff's lab that conflicted with other statements received by the auditor.

406.    Defendants knew the aforementioned statements were false or failed to exercise ordinary care to determine their veracity, because they knew or should have known when and how the audit was ordered, because their agents ordered the audit.

407.    Upon information and belief, positive statements made about Plaintiff were not included in the report. The report was made to create negative impressions of Plaintiff to third parties and it ignored and/or de-emphasized positive statements about Plaintiff's performance and conduct.

408.    Plaintiff's reputation at Duke was damaged by statements in this report because they were negative, served to create negative impressions of Plaintiff.

409.     The statements impinge on Plaintiff's professional capabilities.  Plaintiff is entitled to damages.

410.    Plaintiff has suffered damages as a result of Defendants' libel, that includes, but are not limited to, lost compensation and wages, out of pocket expenses, emotional distress, and damage to his professional reputation.

## EIGHTEENTH  CAUSE OF ACTION
### EQUITABLE ESTOPPEL, QUASI-ESTOPPEL, MEND THE HOLD

411.     Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 410 above as if fully set forth herein.

412.     For the actions described herein, Defendant Duke should be estopped and prevented from denying that the DFH is part of the contract existing between Defendant Duke and Plaintiff under the doctrines of equitable estoppel, quasi-estoppel, and the "mend the hold" doctrine.

## NINETEENTH CAUSE OF ACTION
### DECLARATORY JUDGMENT

413.     Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 412 above as if fully set forth herein.

414.     Defendants have violated the purpose of the Declaratory Judgment Act which is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.

415.      An action under the Declaratory Judgment Act may be used to determine the construction of a statute and the legal rights of persons under that statute

416.     The Declaratory Judgment Act is to be liberally construed and administered.

417.     Declaratory judgment is necessary to cure the wrongs identified above.

418.      By reason of the foregoing, Plaintiff is entitled to declaratory relief.

## TWENTHIETH CAUSE OF ACTION
### INJUNCTIVE RELIEF

419.     Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 418 above as if fully set forth herein.

420.     Injunctive relief is necessary to cure the wrongs identified above and prevent Defendants from taking future actions that violate Plaintiff's legal rights.

421.     Among other items, Defendants should be enjoined from taking retaliatory actions against Plaintiff.

422.     By reason of the foregoing, Plaintiff is entitled to injunctive relief.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff prays the Court that it:

1. Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of Plaintiff's rights;

2. Permanently enjoin the Defendants from engaging in said unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law;

3. Award Plaintiff compensatory damages for pecuniary losses, emotional pain, and mental anguish, embarrassment and humiliation for each of the above stated causes of actions in an amount more than $25,000.00, together with attorney's fees pursuant to 42 U.S.C. § 1988 and North Carolina law, plus the costs and disbursements of this action;

4. Award Plaintiff punitive damages and affirmative relief necessary to eradicate the effects of each claim regarding the intentional unlawful retaliation, unlawful practices, unlawful conduct, unlawful employment opportunity denials and unlawful discrimination.

5. Award Plaintiff all appropriate statutory damages.

6. Grant Plaintiff a jury trial on all issues of fact; and

7. Grant such other relief as may be just and proper.


This is the 21st day of May 2020.

_____/s/Janet J. Lennon_____

Janet J. Lennon, Attorney for Plaintiff
N.C. Bar No.: 30458
Tiffany Russell, Attorney for Plaintiff
N.C. Bar No.: 37756
123 West Main St., Suite 310
Durham, NC 27701
Phone (919) 680-8548
Fax  (919) 680-8549